EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, su Presidente<br>    Peticionarios<br><br>vs.<br><br>Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc.<br>    Recurridos<br><br>vs.<br><br>Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O'Neill García<br>    Parte Demandante No<br>        Recurrida<br><br>vs.<br><br> César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez; y otros<br> Peticionarios-Terceros<br>        Demandados | Certiorari<br><br>2008 TSPR 47<br><br>173 DPR _____ |

Número del Caso: CC-2006-1063

Fecha: 13 de marzo de 2008

Tribunal de Apelaciones:

         Región Judicial de Bayamón, Panel VI

Juez Ponente:

         Hon. Carlos M. Rodríguez Muñiz

Abogados de la Parte Peticionaria:

         Lcdo. César T. Andréu Megwinoff
         Lcdo. Francisco J. Andréu Ramírez de Arrellano
         Lcdo. Blas R. Ferraiuoli Martínez
         Lcda. Marcelle D. Martell Jovet
         Lcdo. Herman Colberg
         Lcdo. José Otero Matos

Abogados de la Parte Recurrida:

         Lcdo. Rafael Alonso Alsonso
         Lcda. Delia Cabán Dávila
         Lcdo. Andrés W. López

Materia: Acción Civil, Injunction

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., así como Henry W. Schettini Gutiérrez, su Presidente<br>    Peticionarios<br><br>v.<br><br>Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc.<br>    Recurridos<br><br>v.<br><br>Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O'Neill García<br>Parte Demandante No Recurrida<br><br>v.<br><br>César T. Andréu Megwinoff; Blas R. Ferraiuoli Martínez; y otros<br>Peticionarios-Terceros Demandados | CC-2006-1063 |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

*EN RECONSIDERACIÓN*

San Juan, Puerto Rico, a 13 de marzo de 2008

El presente recurso llega ante nuestra consideración por vía de una solicitud de reconsideración. El 20 de noviembre de 2007, por estar igualmente divididos, confirmamos la sentencia del Tribunal de Apelaciones que

dejó sin efecto una orden de *injunction* preliminar dictada por el Tribunal de Primera Instancia.

A pesar de que dispusimos del presente caso mediante sentencia, la misma estuvo acompañada de varias opiniones particulares. De ellas se deducen las dos controversias principales que debemos atender en reconsideración. En primer término, debemos aclarar si la petición de *injunction* preliminar en este caso se rige por la Regla 56 sobre remedios provisionales en aseguramiento de sentencia, o si, por el contrario, es de aplicación la Regla 57 de dicho cuerpo normativo que versa sobre el recurso de *injunction*.

En segundo término, debemos examinar si abusó de su discreción el Tribunal de Primera Instancia al conceder la orden *injunction* preliminar luego de celebrar una vista en la que no recibió cierta prueba testifical. Es decir, nos corresponde examinar la discreción que poseen los tribunales de instancia para limitar el tipo de evidencia que se admitirá en una vista de *injunction* preliminar.

I

Las partes en el presente caso nos solicitan reconsiderar la sentencia emitida el 20 de noviembre de 2007. La peticionaria, Asociación de Vecinos de Villa Caparra Sur (Asociación de Vecinos), nos solicita resolver que su pedimento de remedio provisional en aseguramiento de sentencia se rige por la Regla 56 de Procedimiento Civil, disposición reglamentaria que provee para la expedición de

una orden para hacer o desistir de hacer cualesquiera actos específicos. 32 L.P.R.A. Ap. III, R. 56. Esta Regla además, exime al peticionario del pago de una fianza cuando, entre otras instancias, un documento público o privado, firmado ante una persona autorizada para administrar juramentos acredite que la obligación es legalmente exigible. 32 L.P.R.A. Ap. II, R. 56.3. Además, la Asociación de Vecinos nos solicita paralizar la construcción realizada por la Asociación de Fomento Educativo (AFE) mientras se dilucida el pleito de *injunction* permanente en los méritos.

Por su parte, AFE nos solicita aclarar que la petición de *injunction* preliminar de la Asociación de Vecinos se rige por las disposiciones de la Regla 57 de Procedimiento Civil, 32 L.P.R.A., Ap. II. En particular, aduce que el Tribunal de Primera Instancia otorgó el remedio de *injunction* preliminar bajo la Regla 57 de Procedimiento Civil y que simplemente se equivocó al aplicar la disposición de la Regla 56.3 que exime al peticionario del requisito de prestar fianza cuando el derecho reclamado surge de un documento público.

Luego de analizar los argumentos de las partes, acogemos la petición de reconsideración presentada por la Asociación de Vecinos y reconsideramos nuestro anterior dictamen. Por las razones que detallaremos a continuación, revocamos la sentencia del Tribunal de Apelaciones y reinstalamos en todos sus efectos, la orden de *injunction*

preliminar dictada por el Tribunal de Primera Instancia en el presente caso.

Veamos los hechos que engendran la controversia que nos atañe resolver.

## II

Como adelantamos, el presente caso versa sobre una solicitud de *injunction* preliminar presentada por la demandante-peticionaria Asociación de Vecinos, a los fines de hacer valer las servidumbres en equidad que gravan las propiedades sitas en la Urbanización Villa Caparra Sur. En síntesis, la referida servidumbre restringe el tipo de estructura que se puede construir en el lugar a "una casa residencia de una sola vivienda".[1] *Véase* apéndice del recurso de *certiorari*, págs. 230-31.

En aras de vindicar la servidumbre en equidad antes reseñada, el 3 de noviembre de 2005, la Asociación de Vecinos presentó una demanda de interdicto preliminar y permanente. Posteriormente, la Asociación de Vecinos presentó una petición de *Injunction* preliminar como remedio provisional en aseguramiento de sentencia.

La referida solicitud de *injunction* preliminar desembocó en un complicado trámite judicial ante el foro

---

[1] Dicha propiedad, a su vez, está afecta a las siguientes restricciones: "no podrá construirse nada más que una casa destinada a residencia para una sola familia y cuya edificación deberá construirse de concreto a un costo mínimo de [c]inco [m]il [d]ólares, y dicha casa deberá ser construida a una distancia no menor de quince pies de la calle que dé a su frente". *Véase*, escritura número 47, otorgada el 16 de diciembre de 1950, apéndice del recurso de *certiorari*, págs. 237-238.

primario y ante el foro apelativo intermedio. Ello provocó que el Tribunal de Apelaciones interviniera en el caso en dos ocasiones para atender los planteamientos de AFE sobre deficiencias en la expedición de la orden de *injunction* preliminar y, posteriormente, para examinar reclamos sobre la legalidad de la determinación del foro primario de celebrar una vista de *injunction* luego de que el foro apelativo intermedio anuló una primera orden de paralización por deficiencias en la notificación. Tras estos trámites apelativos, el tribunal de instancia celebró la vista de *injunction* preliminar.

En la vista, el tribunal escuchó los argumentos de las partes y recibió prueba documental en apoyo a sus planteamientos. Durante los procedimientos, surgió una controversia sobre si el tribunal debía recibir prueba testifical. En primer término, los abogados de AFE solicitaron que el tribunal de instancia celebrara una vista evidenciaria e indicaron que tenían testigos en sala para declarar si el tribunal lo permitía.[2] *Véase* transcripción de la vista, apéndice del recurso de *certiorari*, pág. 579. Sin embargo, el honorable juez del tribunal de instancia se reservó el fallo final sobre la petición de AFE y determinó que escucharía los argumentos de las partes.[3] *Id.* pág. 581.

---

[2] Entre los testigos disponibles mencionaron al ingeniero Camilo Almeyda y al señor Juan Riestra.

[3] Además, el tribunal de instancia pautó una vista evidenciaria para el 2 de noviembre de 2006 en la que

Posteriormente, el representante legal de la Asociación de Vecinos solicitó autorización para presentar el testimonio de su perito ingeniero. Ante ello, el honorable juez determinó que no era necesario recibir prueba testifical para determinar si procedía emitir una orden bajo la Regla 56 de Procedimiento Civil para paralizar la obra. *Véase* Trascripción de la vista, apéndice del recurso de *certiorari*, pág. 711. Adujo que contaba con abundante prueba documental para determinar si procedía paralizar la obra de construcción en la residencia J-42. Por tanto, determinó que celebraría una vista argumentativa y citó a las partes, junto a sus peritos ingenieros, a una inspección ocular que se celebraría el 31 de julio de 2006.

Luego de realizar la inspección ocular de la residencia J-42 en la Urbanización Villa Caparra Sur y de proveerles a las partes una oportunidad para suplementar sus argumentos, el tribunal de instancia emitió una orden de *injunction* preliminar. Mediante su orden, el foro primario paralizó las obras de construcción realizadas en la propiedad J-42 y determinó que no procedía imponer el pago de una fianza, según dispone la Regla 56 de Procedimiento Civil.

Inconforme, AFE acudió al Tribunal de Apelaciones. Dicho foro apelativo intermedio revocó la orden de paralización. Determinó que había errado el tribunal de

_____

dilucidaría si las servidumbres en equidad de la urbanización en controversia se han extinguido.

instancia al emitir la orden de paralización luego de celebrar una vista argumentativa en la que no le permitió a AFE presentar su prueba testifical y cierta prueba documental. Además, determinó que el tribunal de instancia debió celebrar una vista evidenciaria en la cual las partes pudieran presentar prueba testifical y documental.

El 22 de noviembre de 2006 la Asociación de Vecinos presentó ante este Tribunal un recurso de *certiorari* y una moción en auxilio de jurisdicción. El 5 de diciembre de 2006 declaramos no ha lugar ambas peticiones. En reconsideración, le concedimos término a la parte recurrida para mostrar causa por la cual no debíamos expedir el presente recurso. En auxilio de nuestra jurisdicción, paralizamos las obras de construcción.

Así las cosas, el 20 de noviembre de 2007 confirmamos la sentencia del Tribunal de Apelaciones. Inconforme, el 10 de diciembre de 2007 la Asociación de Vecinos presentó una oportuna moción de reconsideración. AFE presentó la suya en esa misma fecha.

Luego de analizar las mociones de reconsideración presentadas en el presente caso, acogemos la petición de la Asociación de Vecinos. Estando en posición de hacerlo, procedemos a reconsiderar nuestro dictamen emitido el 20 de noviembre de 2007.

**III**

Como asunto apremiante, la presente controversia nos requiere demarcar los planos en los que se desenvuelven las

Reglas 56 y 57 de Procedimiento Civil. Ello, en vista de que ambas reglas proveen para la concesión de una orden de hacer o desistir de hacer como remedio en aseguramiento de sentencia.

Sobre este asunto, AFE nos solicita excluir el presente caso del entorno de la Regla 56 de Procedimiento Civil. Por su parte, la Asociación de Vecinos postula que por la naturaleza misma de este pleito, en el que se pretende vindicar una servidumbre en equidad debidamente inscrita y cuya legalidad y vigencia ha sido confirmada por este Tribunal,[4] procede aplicar las disposiciones de la Regla 56 sobre remedios provisionales.

La Regla 56 de Procedimiento Civil faculta a los tribunales a expedir una orden de hacer o desistir de hacer, como orden provisional en aseguramiento de sentencias. Esta orden, en esencia, cumple un propósito análogo al del *injunction* preliminar.[5] Esto es, pretende mantener el *status quo*, mientras se dilucida el pleito en sus méritos.

En su parte pertinente, la Regla 56.5 de Procedimiento Civil establece que "no se concederá ninguna orden… para hacer o desistir de hacer cualquier acto específico, sin una notificación a la parte adversa". 32 L.P.R.A. Ap. III,

---

[4] *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 D.P.R. 346 (1986).

[5] Debido a la similitud de propósitos entre la orden de hacer o desistir de hacer de la Regla 56 de Procedimiento Civil y el *injunction* preliminar que se rige por la Regla 57 de dicho cuerpo normativo, en nuestra discusión denominaremos la orden de hacer o desistir de hacer como *injunction* preliminar.

R. 56.5. Sin embargo, contempla la expedición de una orden *ex parte*, cuando se acredite mediante declaración jurada, que el peticionario sufrirá daños o pérdidas irreparables si se notifica y celebra una vista. *Id.* Por su parte, la Regla 56.3 autoriza la expedición de un remedio provisional sin necesidad de prestar fianza cuando surja de un documento público o privado, firmado ante una persona autorizada para administrar juramento, que la obligación es legalmente exigible; cuando se trate de un litigante insolvente exento por ley del pago de aranceles y derechos;[6] o cuando se gestione el remedio luego de dictada la sentencia. 32 L.P.R.A. Ap. III, R. 56.3.

Por otro lado, la Regla 57 de Procedimiento Civil gobierna las pautas procesales del mecanismo de *injunction*. Así, la Regla 57.1 establece que no se expedirá un *injunction* preliminar sin antes notificar a la parte adversa. Además, dicha Regla permite consolidar la vista de *injunction* preliminar con el juicio en los méritos. 32 L.P.R.A. Ap. III, R. 57.1. Finalmente, según las disposiciones de la Regla 57.3, sólo se "dictará una orden de *injunction* preliminar mediante la prestación de fianza,

---

[6] Ello requiere además que,
> a juicio del tribunal la demanda adujere hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiere demostrarse, y hubiere motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla.

32 L.P.R.A. Ap. III, R. 56.3.

"por la cantidad que el tribunal considere  justa, para el pago de las costas y daños en que pueda incurrir o que haya sufrido cualquier parte que haya resultado indebidamente puesta en entredicho o restringida". 32 L.P.R.A. Ap. III, R. 57.3.

De lo anterior se deduce una evidente duplicidad de mecanismos procesales para solicitar una orden de *injunction* preliminar como medida para asegurar la efectividad de la sentencia que el tribunal en su día podrá dictar.  Esta duplicidad repercute de forma dramática en la determinación de la imposición de fianza puesto que, aun cuando ambas reglas proveen mecanismos análogos para obtener un mismo fin, la Regla 56 permite que el tribunal, a modo de excepción, exima al solicitante del pago de fianza, mientras que del texto de la Regla 57 no surge dicha facultad.

Veamos el historial de ambas Reglas y el origen del mecanismo de *injunction* en nuestro ordenamiento.

**IV**

**A**

La Regla 56 de Procedimiento Civil se incorporó a nuestro ordenamiento procesal civil en el año 1958. Dicha Regla le permite a los tribunales conceder remedios provisionales en todo pleito a los fines de "asegurar la efectividad de las sentencias y reivindicar…,  no s[ó]lo la justicia debida a las partes, sino también la dignidad de la función judicial".  *Román v. S.L.G. Ruiz*, 160 D.P.R.

116, 120 (2003) (*citando a Stump Corp. v. Tribunal Superior*, 99 D.P.R. 179, 183-84 (1970)). "Su única limitación es que la medida sea razonable y adecuada al propósito esencial de la misma, que es garantizar la efectividad de la sentencia que en su día pudiera dictarse". *F. D. Rich Co. v. Tribunal Superior*, 99 D.P.R. 158, 176 (1970).

Un estudio de la génesis de esta Regla sobre remedios provisionales demuestra que dicha disposición encuentra su antecedente directo en la Ley para asegurar la efectividad de sentencias del 1ro de marzo de 1902.[7] En su artículo 1, la Ley del 1902 disponía que "[t]oda persona que demandare en juicio el cumplimiento de una obligación, podrá obtener una resolución del tribunal que conociere de la demanda, adoptando las medidas procedentes, según los casos, para asegurar la efectividad de la sentencia que haya de dictarse en el caso de prosperar la acción ejercitada".

Al amparo de la Ley de 1902, los remedios disponibles dependían del tipo de obligación de la que se tratara. Así, por ejemplo, en el caso de una obligación de entregar una cosa determinada, procedía la prohibición de enajenar, en el caso de una obligación de entregar una suma de dinero, procedía un embargo y, en el caso de una obligación de no

---

[7] Para el texto completo de la Ley, *véase* Código de Enjuiciamiento Civil de Puerto Rico, págs., 96-102 (1933). La Regla 72 de Procedimiento Civil de 1972 derogó expresamente la Ley de Aseguramiento de sentencias de 1902. 32 L.P.R.A. Ap. III, R. 72.

hacer, procedía la prohibición de hacer.[8]  Art. 6, Ley de 1ro de marzo de 1902.   Además, la Ley de 1902 le confería a los tribunales la facultad de adoptar otras medidas para asegurar la efectividad de una sentencia.  *Id.*

Con las disposiciones de la Ley de 1902 como norte, en el año 1958 se aprobó la Regla 56 de Procedimiento Civil. Mediante dicha Regla, se amplió la disponibilidad de los remedios provisionales en aseguramiento de sentencia. Éstos se hicieron extensivos a **cualquier pleito, sin importar el tipo de obligación que se reclamara**. *Suárez Martínez v. Tribunal Superior,* 85 D.P.R. 544, 550 (1962). *Véase además,* Borrador *del proyecto de reglas de enjuiciamiento civil,* Comité consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, pág. 142 (1954).

A grandes rasgos, la Regla 56 concretó el legado de la Ley de 1902 al recoger las medidas dispuestas en la antigua Ley de 1902, sin limitar su aplicación a la naturaleza de la reclamación.   *Borrador del proyecto de reglas de*

---

[8] Las disposiciones de la Ley de 1902 guardaban semejanza con el artículo 1.428 del Código de Enjuiciamiento Civil español de 1881.  El referido artículo 1.428 de la ley española disponía en la parte pertinente:

> Cuando se presente en juicio algún documento… en donde aparezca con claridad una obligación de hacer, o de no hacer, o la de entregar cosas específicas, el juez podrá adoptar, a instancia del demandante y bajo la responsabilidad de éste, las medidas que, según las circunstancias, fueren necesarias para asegurar en todo caso la efectividad de la sentencia que en el juicio recayere.

José M. Manresa y Navarro, *Comentarios a la Ley de enjuiciamiento civil reformada*, Madrid, Instituto Editorial Reus, 1957, Tomo VI, pág. 331.

*enjuiciamiento civil, op. cit.,* pág. 147. Tras la adopción de esta Regla, entre las medidas provisionales disponibles en todo pleito se encuentran la prohibición de enajenar, la sindicatura y **la orden para hacer o desistir de hacer**. 32 L.P.R.A. Ap. III, R. 56.1.

Al incluir la orden de hacer o desistir de hacer entre los posibles remedios en aseguramiento de sentencia, la Regla 56 de Procedimiento Civil integró el *injunction* como medida provisional según dispone el artículo 677 del Código de Enjuiciamiento Civil y las disposiciones sobre aseguramiento de sentencias contenidas en el artículo 2(d) de la Ley para asegurar la efectividad de las sentencias de 1902. *Borrador del proyecto de reglas de enjuiciamiento civil,* Comité consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, pág. 146 (1954). En virtud de ello, la Regla 56 le confirió a los tribunales la facultad de emitir un *injunction* preliminar con el propósito de mantener el *status quo*, mientras se dilucida el pleito en sus méritos. *Véanse Mun. de Ponce v. Gobernador*, 136 D.P.R. 776, 784 (1994); *Cobos Liccia v. DeJean Packing Co., Inc.* 124 D.P.R. 896 (1989).

En fin, el tracto histórico de la Regla 56 demuestra que ésta asentó en nuestro ordenamiento el *injunction* preliminar como un mecanismo en aseguramiento de sentencia que está disponible en todo tipo de pleito, sin importar la naturaleza de la obligación de la que se trate. Al igual que todos los mecanismos en aseguramiento se sentencia,

siempre que se cumpla alguna de las excepciones dispuestas en la Regla 56.3, el mismo se puede conceder sin necesidad de prestar fianza.

No empece el hecho que esta Regla está vigente desde el año 1958, no hemos tenido ocasión de examinar los requisitos que deben regir la concesión de una orden de hacer o desistir de hacer bajo esta Regla. Tampoco hemos delimitado su ámbito de aplicación en un pleito como el que nos ocupa en el que se solicita el cumplimiento con una servidumbre en equidad. Este ejercicio requiere, sin embargo, examinar la figura del *injunction*.

**B**

La figura anglosajona del *injunction* es producto de la coexistencia en Inglaterra y Estados Unidos del sistema de derecho común y la equidad. *Véanse A.P.P.R. v. Tribunal Superior*, 103 D.P.R. 903,908 (1975); D. Rivé Rivera, *Recursos Extraordinarios*, San Juan, 2da ed., 1996, págs. 1–5.[9] A la luz de esta dicotomía, el *injunction* cobró vida en el derecho común inglés al amparo de los poderes del Canciller del Rey de Inglaterra de conceder aquellos remedios legales que los tribunales de derecho común no podían atender. *Véanse* Rivé Rivera, *op. cit.;* Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*, Minnesota, West Publishing Co., Vol. 11A, 1995, sec.2944, pág. 82.

---

[9] Para un comentario sobre la historia del derecho común y la equidad, *véase* T.O. Main, *Traditional Equity and Contemporary Procedure*, 78 Wash. L. Rev. 429 (2003).

El peculiar origen del remedio de *injunction* influyó en el estándar de adjudicación de este remedio. Así, en virtud del hecho que la actuación de las cortes en equidad al otorgar un *injunction* redundaba en una intromisión en las facultades de las cortes de derecho común, el *injunction* se concibió como un remedio extraordinario para los casos en que los promoventes no pudieran obtener un remedio adecuado en las cortes de derecho común. *Véanse* John Leubsdorf, *The Standard for preliminary injunctions*, 92 Harv. Law. Rev. 525, 527 (1978); Arthur R. Miller & Mary K. Kane, *op. cit*. Naturalmente entonces, el estándar para la concesión de este remedio legitimó la adopción de los requisitos de ausencia de un remedio adecuado en ley y daño irreparable. *Véanse* Leubsdorf, op. cit., pág. 530; Arthur R. Miller & Mary K. Kane, *op. cit.*, págs. 81-86.

A pesar de que en nuestra jurisdicción no existe dicotomía entre derecho común y equidad, nuestro ordenamiento adoptó la figura del *injunction* mediante legislación en el año 1902. Posteriormente, la Ley del 8 de marzo de 1906 derogó la Ley de injunction de 1902 y estableció los contornos básicos de dicha figura. Actualmente, tanto el Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. secs. 3521-3524; 3561-66, como la Regla 57 de Procedimiento Civil de 1979, rigen los aspectos sustantivos y procesales del *injunction*. A su vez, la Regla 57 de Procedimiento Civil corresponde al texto de la Regla 65 de Procedimiento Civil federal.

Sobre la adopción de esta figura en nuestro ordenamiento, en *Glines v. Matta*, 19 D.P.R. 409, 415-16 (1913) indicamos que "[l]as cortes de Puerto Rico no tienen jurisdicción general en equidad tal como la misma se aplica en las cortes de Inglaterra y de Estados Unidos, pero tienen por virtud de la Ley de *injunction* jurisdicción para impedir las infracciones de los derechos". En decisiones posteriores adoptamos los criterios normativos que rigen la concesión de este remedio y cuyos orígenes y propósitos se remontan a la dicotomía entre derecho común y equidad. Por tanto, al adoptar los criterios que deben guiar la discreción de los tribunales, nos hemos remitido a la normativa federal sobre el *injunction* preliminar.

A estos efectos, establecimos en *P.R. Telephone Co.v. Tribunal Superior*, 103 D.P.R. 200, 202 (1975) que la concesión de un ***injunction* preliminar** depende de los siguientes criterios:

> a) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el *injunction*;
> b) **su irreparabilidad o la existencia de un remedio adecuado en ley;**
> c) la probabilidad de que la parte promovente prevalezca en los méritos;
> d) la probabilidad de que la causa se torne académica;
> e) el posible impacto sobre el interés publico.

(énfasis nuestro). *Véanse además, Misión Ind. P.R. v. J.P. y A.A.A.,* 142 D.P.R. 656, 679-80 (1997); *Mun. de Ponce v. Gobernador, supra*, pág. 784; *Cobos Liccia v. De Jean Parking Co., Inc., supra,* pág. 902.

Al aplicar los criterios antes enumerados, hemos reiterado que la "concesión o denegación [de un *injunction*] exige que la parte promovente demuestre la ausencia de un remedio adecuado en ley". *Misión Ind. P.R. v. J.P. y A.A.A., supra*, pág. 681. Además, hemos enfatizado la necesidad de que la parte promovente demuestre la existencia de un daño irreparable "que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles". *Id. Véanse además, Com. Pro. Perm. Bda. Morales v. Alcalde*, 158 D.P.R. 195, 205 (2002); *Loíza Sugar Company v. Hernáiz y Albandoz*, 32 D.P.R. 903, 906 (1924).

En *Cruz v. Ortiz*, 74 D.P.R. 321, 328 (1953) indicamos que "procede un *injunction* para evitar daños irreparables o una multiplicidad de procedimientos" y clarificamos que "[e]l concepto de evitación de daños irreparables o de una multiplicidad de procedimientos constituye un aspecto de la regla básica de que procede un *injunction* cuando el remedio existente en el curso ordinario de la ley es inadecuado".[10]

---

[10] Sin embargo, tras analizar las circunstancias particulares de ese caso, optamos por flexibilizar la aplicación del requisito de ausencia de un remedio adecuado en ley y concedimos un *injunction* aun cuando existía un remedio en ley que el peticionario puede invocar. En *Cruz v. Ortiz, supra*, el demandante solicitó un *injunction* para compeler a su vecino a cerrar unos huecos existentes en una pared colindante. Al determinar que procedía emitir un *injunction* indicamos que el recurso de una acción confesoria de servidumbre de luces y vistas no excluía la eficacia del *injunction* porque el menoscabo continuo de los derechos del demandante podría conllevar una multiplicidad de litigios.

*Id.(citas omitidas)*.   *Véase además, Com. Pro. Perm. Bda.*

*Morales v. Alcalde*, *supra*, pág. 204.

Conforme a lo anterior, el *injunction* provisto en la

Regla 57 de Procedimiento Civil se asentó en nuestro

ordenamiento como un remedio extraordinario.  En virtud de

ello, en nuestros pronunciamientos le hemos conferido

vitalidad al requisito de daño irreparable y a la exigencia

de ausencia de un remedio adecuado.[11]

No empece el hecho que hemos validado el requisito de

daño irreparable y la exigencia de ausencia de remedio

adecuado en ley, también hemos establecido y reiterado que,

en los casos en que se vindican las disposiciones de una

servidumbre en equidad mediante un *injunction* permanente,

**no es necesario probar daños reales o perjuicios**

**sustanciales**.   *Asoc. Urb. Huyke v. Bco. Santander*, 157

D.P.R. 521, 537 (2002); *Colón v. San Patricio,* 81 D.P.R.

242, 259 (1959); *Pérez Espinosa v. Pagán*, 79 D.P.R. 195

(1956); *Santaella v. Purón,* 60 D.P.R. 552 (1942).  *Véase*

*además*, *Glines v. Matta, supra*, pág. 416.  Ello, en vista

de que el *injunction* es el remedio adecuado para hacer

valer las disposiciones de una servidumbre en equidad.

*Glines v. Matta, supra*; *Colón v. San Patricio, supra*, págs.

253-54; *Rodríguez v. Gómez et. al.*, 156 D.P.R. 307, 312

(2001); *Asoc. V. Villa Caparra v. Iglesia Católica, supra*,

---

[11] Es menester señalar que el requisito de daño irreparable
no es un elemento independiente de una acción de *injunction*
permanente.  En dicho tipo de acción, el daño irreparable
sirve de medio para establecer la ausencia de un remedio
adecuado en ley.  *Véase* Arthur R. Miller & Mary K. Kane,
*op. cit.,* págs. 93-94.

págs. 353-54 (1986); *Cruz v. Ortiz, supra.* Así, al amparo de esta normativa, hemos rechazado la aplicación del criterio de daño irreparable y hemos expresado que cuando se vindica una servidumbre en equidad sólo se debe probar la violación a la restricción para que el promovente tenga derecho al remedio interdictal. *Pérez Espinosa v. Pagán, supra; Santaella v. Purón, supra,* págs. 558-59.

Al examinar si procede otorgar un *injunction* permanente en el contexto de un pleito sobre una servidumbre en equidad, hemos centrado nuestro análisis en si en efecto ha ocurrido una violación a la servidumbre, sin considerar si la parte está expuesta a sufrir un daño irreparable o si la parte carece de un remedio adecuado en ley. Por ejemplo, en *Rodríguez v. Gómez,* 156 D.P.R. 307 (2002), resolvimos que procedía conceder un *injunction* permanente para prohibir cierto uso comercial que contravenía las disposiciones de la servidumbre en equidad que gravaba el predio en controversia. Al así resolver, prescindimos del criterio de daño irreparable y nos limitamos a examinar si el uso propuesto violaba la condición restrictiva del proyecto residencial. Razonamiento análogo aplicamos en nuestras decisiones en *Asoc. Vec. Urb. Huyke v. Bco. Santander, supra,* y *Residentes Parkville v. Díaz,* 159 D.P.R. 374 (2003). En ambos casos, examinamos si los usos impugnados eran contrarios a las respectivas servidumbres en equidad en

controversia y ponderamos si dichas condiciones restrictivas habían perdido vigencia.

En fin, el hecho que al vindicar las disposiciones de una servidumbre en equidad el promovente solicita precisamente un *injunction* permanente convierte en impertinente el criterio de daño irreparable. De igual modo, es inmaterial examinar si existe otro remedio adecuado en ley. Adviértase que la concepción tradicional del daño irreparable postula que se trata de un daño que no puede ser adecuadamente compensado mediante un remedio en ley. *Véase Com. Pro Perm. Bda. Morales v. Alcalde, supra*, pág. 204. Tomando esta acepción del daño irreparable, es forzoso concluir que en un pleito sobre una servidumbre en equidad, no procede estimar si existen otros remedios, pues el remedio que procede es el *injunction.* Como corolario de ello, el *injunction* preliminar deja de ser subsidiario frente a otros remedios en ley- como por ejemplo, un remedio en daños-. En esa medida, el *injunction* preliminar se convierte en un remedio ordinario que se divorcia de los requisitos tradicionalmente asociados a la dicotomía entre ley y equidad y adquiere una flexibilidad que lo desvincula de dicho pasado.

**V**

La anterior discusión demuestra que tanto la Regla 56 de Procedimiento Civil, como la Regla 57 de dicho cuerpo normativo vislumbran la concesión de un *injunction* preliminar que pretende mantener el *status quo*, mientras se

dilucida el pleito en los méritos. Como vimos, la Regla 56 le permite a los tribunales emitir una *orden de hacer o desistir de hacer* en todo pleito. Además, en ciertas circunstancias permite que la misma se expida sin previa prestación de fianza. Por su parte, la Regla 57 vislumbra la concesión de un *injunction* preliminar e impone el requisito de prestación de fianza sin excepción expresa y exige el cumplimiento con los requisitos adoptados en *P.R. Telephone Co. v. Tribunal Superior, supra*.

Según hemos indicado, en el presente caso se debate cuál de estas dos reglas rige el *injunction* preliminar solicitado por la Asociación de Vecinos. En vista de que estamos ante un pleito en el que el *injunction* permanente está disponible como un remedio ordinario, resolvemos que la solicitud de *injunction* preliminar presentada por la peticionaria, se debe tramitar al amparo de la Regla 56. Habida cuenta de que los requisitos de daño irreparable y ausencia de remedio adecuado en ley no forman parte de un pleito de *injunction* permanente en el que se vindican las disposiciones de una servidumbre en equidad debidamente inscrita en el Registro de la Propiedad, es innecesario incluirlos en el estándar de adjudicación de un *injunction* preliminar.

Conforme a la norma firmemente establecida por este Tribunal, en el presente pleito los peticionarios no tienen que probar la existencia de daño irreparable o la ausencia de un remedio adecuado en ley. En virtud de ello, la

presente reclamación es cónsona con el mecanismo de
*injunction* preliminar disponible en todo pleito en virtud
de las disposiciones flexibles de la Regla 56.[12] Es decir,
en el presente caso adviene innecesario cumplir con dos de
los requisitos tradicionalmente exigidos por la Regla 57 en
el contexto del tradicional *injunction* preliminar, por lo
que procede aplicar las disposiciones de la Regla 56 sobre
remedios provisionales en aseguramiento de sentencia. Es
forzoso concluir entonces que nada impedía que el Tribunal
de Primera Instancia dictara la orden de *injunction*
preliminar al amparo de dicha Regla.[13]

---

[12] De igual modo, la solicitud de *injunction* preliminar
presentada por la Asociación de Vecinos es cónsona con las
disposiciones de la Regla 56, pues en dicha petición la
Asociación de Vecinos argumentó que era innecesario probar
la presencia de daños irreparables. *Véase* apéndice del
recurso de *certiorari,* págs.263-80. Ello demuestra que es
incorrecta la aseveración de la opinión disidente a los
efectos de que la Asociación de Vecinos solicitó el remedio
al amparo de la Regla 57 porque aludió a los requisitos del
*injunction* preliminar que hemos adoptado en el contexto de
la Regla 57. No podemos olvidar que es norma reiterada por
este Tribunal que, "independientemente de lo solicitado por
las partes, el tribunal concederá el remedio que en derecho
proceda". *Náter v. Ramos,* 162 D.P.R. 616, 636 (2004); *Soto
López v. Colón,* 143 D.P.R. 282, 291 (1997). Por tanto, no
erró el tribunal de instancia al emitir el *injunction*
preliminar al amparo de la Regla 56 de Procedimiento Civil
puesto que a la luz de la petición de la Asociación de
Vecinos, ése es el remedio que procedía en derecho.

[13] En este respecto, la opinión disidente insiste en que el
tribunal de instancia otorgó el *injunction* preliminar al
amparo de la Regla 57 de Procedimiento Civil y que
simplemente se equivocó al aplicar las disposiciones de la
Regla 56 en cuanto a la fianza. No podemos estar de
acuerdo con este razonamiento que ignora las expresiones
que hizo el juez del tribunal de primera instancia al
emitir el *injunction* preliminar y al dictar la
correspondiente resolución y orden. Primero, debemos
reiterar que en la vista, el juez indicó que estaba
considerando un remedio provisional al amparo de la Regla
56 de Procedimiento Civil. *Véase* Trascripción de la vista,

Nuestra conclusión, sin embargo, no implica que debamos abandonar nuestros pronunciamientos anteriores en torno a los criterios que deben guiar la discreción de los tribunales al atender una solicitud de *injunction* preliminar como la que nos ocupa. Ello, en vista de que la concesión de un *injunction* preliminar al amparo de la Regla 56 se puede convertir en una limitación provisional del derecho de la parte afectada por la orden a la libre disposición de sus bienes. F*reeman v. Tribunal Superior*, 92 D.P.R. 1, 25(1965). El tribunal, por tanto, debe "garantizar al reclamante pero no oprimir al demandado o causarle innecesarias dificultades…". *Id.*

Es decir, entendemos necesario preservar la riqueza de algunos de los criterios adoptados en *P.R. Telephone Co. v. Tribunal Superior, supra*, sobre el estándar de adjudicación de un *injunction* preliminar al amparo de la Regla 57 de Procedimiento Civil. Por tanto, al adjudicar una solicitud de *injunction* preliminar como la que nos ocupa, los tribunales deben tomar en cuenta la naturaleza de los daños que pueden ocasionárseles a las partes; la probabilidad de

---

apéndice del recurso de *certiorari*, pág. 711. En segundo lugar, el tribunal empleó un análisis detallado de las disposiciones de la Regla 56.3, el cual no se hizo meramente por error. Sobre este asunto, el juez indicó que "respecto a la solicitud de paralización solicitada por la AVVCS, resolvemos que, a la luz del derecho vigente ésta no viene obligada a prestar fianza para la concesión del remedio provisional solicitado". Apéndice del recurso de *certiorari,* pág. 36. Acto seguido, justificó su determinación en las disposciones de la Regla 56.3. Por tanto, es improcedente aseverar y concluir que el juez del Tribunal de Primera Instancia simplemente se equivocó al eximir a la Asociación de Vecinos de prestar fianza en este caso.

que la parte promovente prevalezca en los méritos; la probabilidad de que la causa se torne académica y el posible impacto sobre el interés publico. *Id*. Además, los tribunales deberán examinar el tiempo que tardó el peticionario en presentar su reclamo y el efecto del tiempo en los intereses de las partes según la justicia sustancial.

Debemos puntualizar además, que preservar el requisito de daño irreparable en este caso, visto como uno que no se puede resarcir adecuadamente en una acción en daños y perjuicios, como se sugiere en la opinión disidente, ignora que la esencia de la determinación en un pleito como el que nos ocupa es sopesar el daño que se la causaría al demandante si se niega erróneamente el interdicto y el daño que se la causaría al demandado si dicho remedio se concede erróneamente. Más importante aún, al emitir un *injunction* preliminar, el tribunal debe examinar si el daño al que está expuesto el peticionario no se podrá prevenir de forma eficaz luego de un juicio en los méritos. Ello, claramente se diferencia de la acepción del daño irreparable a la cual la opinión disidente se aferra.

Finalmente, debemos recordar que el remedio provisional de *injunction* preliminar pretende evitar daños adicionales mientras el tribunal evalúa el caso en los méritos. Además, le permite al tribunal preservar la efectividad de su dictamen judicial final y asegura que el remedio final sea eficaz. Como consecuencia, en un pleito

como el que nos ocupa, el tribunal debe prevenir aquél tipo de daño que no se puede remediar en una etapa posterior del litigio.

Con lo antes expuesto como norte, procedemos a atender los méritos de la moción de reconsideración que tenemos ante nuestra consideración.

**VI**

Al revocar la orden de *injunction* preliminar emitida por el Tribunal de Primera Instancia, el Tribunal de Apelaciones resaltó que dicho foro primario había errado al determinar que no procedía admitir prueba testifical y cierta prueba documental en la vista de *injunction*. En nuestra sentencia del 20 de noviembre de 2007 confirmamos dicha determinación. Sin embargo, luego de examinar la prueba documental que obra en autos y de la cual se sirvió el foro primario para conceder el remedio provisional en aseguramiento de sentencia, hemos decidido reconsiderar nuestro dictamen por entender que el Tribunal de Primera Instancia no abusó de su discreción al determinar que era innecesario recibir prueba testifical en la vista de remedio provisional. Como corolario de ello resolvemos que erró el Tribunal de Apelaciones al dejar sin efecto la referida orden de *injunction* preliminar. Explicamos nuestra determinación.

**A**

La Regla 56.2 de Procedimiento Civil dispone que la parte afectada por una orden de hacer o desistir de hacer,

tendrá derecho a una notificación adecuada **y a la celebración de una vista**. 32 L.P.R.A. Ap. III. R. 56.2 (énfasis nuestro). Sin embargo, dicha Regla no define la discreción que poseen los tribunales para limitar el tipo de prueba necesaria para examinar los méritos del remedio solicitado.

En este respecto, debemos puntualizar que el propósito de una vista de remedio provisional es atender un incidente dentro de un pleito, conforme a los intereses de las partes y a los hechos del caso. Como corolario de ello, al celebrar la vista, le corresponde al tribunal hacer un balance entre los intereses del peticionario y el daño que una orden de *injunction* preliminar puede causarle a la parte que la sufre. **En esta tarea, el tribunal posee discreción para limitar el tipo de evidencia que se admitirá en la vista, siempre que le provea a las partes una oportunidad justa y adecuada de presentar prueba y argumentar.**

Del mismo modo, conforme a la naturaleza de una orden provisional en aseguramiento de sentencia, la determinación de si el tribunal debe recibir prueba oral dependerá de los hechos sustantivos del caso y de la prueba documental que obra en el expediente. Por tanto, ante un planteamiento de violación al derecho a presentar prueba en una vista de *injunction* preliminar bajo la Regla 56 de Procedimiento Civil, nos corresponde evaluar si las partes tuvieron una

oportunidad adecuada de esbozar sus planteamientos y de presentar prueba.

Un análisis de los documentos que obran en el expediente revela que, al otorgar la orden de *injunction* preliminar que nos ocupa, el tribunal de instancia tuvo ante su consideración la siguiente prueba: dos certificaciones registrales que acreditan la inscripción en el Registro de la Propiedad de las servidumbres en equidad que gravan la propiedad J-42 y el tiempo durante el cual AFE ha sido dueña de dicha propiedad; varias fotografías sobre la construcción realizada en la propiedad J-42; documentos que acreditan las pérdidas económicas que AFE enfrentaría de paralizarse la construcción mediante una orden bajo la Regla 56; documentos que demuestran la magnitud y dimensiones de la obra realizada; documento que demuestra que para el año 1996, la Asociación de Vecinos incluyó a la señora Eneida Álvarez (dama alegadamente afiliada a AFE) como residente de la propiedad J-42; y, declaraciones juradas de varias mujeres que han residido en la propiedad J-42 por varios años, incluyendo las declaraciones de las señoras Carmen Socorro Garay Rosa y Myriam Camacho González.

Finalmente, antes de dictar la orden de *injunction* preliminar solicitada por la Asociación de Vecinos, el tribunal de instancia escuchó los argumentos de las partes en torno a sus teorías y defensas. También inspeccionó la propiedad en controversia.

Lo anterior demuestra que el Tribunal de Primera Instancia recibió prueba sobre la existencia de la servidumbre en equidad, sobre las pérdidas que la demandada-recurrida sufriría de paralizarse su obra, sobre la magnitud y naturaleza de las facilidades que AFE construye en la propiedad en controversia y sobre la alegada incuria de los demandantes-peticionarios. Ello demuestra que el foro primario recibió abundante prueba sobre los asuntos medulares para determinar si procedía el *injunction* preliminar solicitado.

No obstante, AFE argumenta que el tribunal de instancia violentó su derecho al debido proceso de ley puesto que se negó a recibir la siguiente prueba: el testimonio del ingeniero Juan Riestra quien ilustraría al tribunal sobre los daños que AFE sufriría de paralizarse la obra; el testimonio del ingeniero Camilo Almeyda quien testificaría que la propiedad que AFE construye cumple con las servidumbres en equidad; y, finalmente, el testimonio de las señoras Myriam Camacho González, Eneida Álvarez y Carmen Socorro Garay, damas afiliadas al Opus Dei, quienes relatarían el tiempo que han vivido o vivieron en la propiedad J-42 a los fines de establecer que la parte demandante incurrió en incuria al hacer valer la servidumbre en equidad frente a AFE. No tiene razón AFE en su argumento.

Aun cuando el tribunal se negó a recibir tanto el testimonio del ingeniero Juan Riestra sobre los daños que

AFE sufriría de paralizarse la obra, como el testimonio del ingeniero Camilo Almeyda, quien testificaría que la propiedad que AFE construye cumple con la servidumbre en equidad; surge de los documentos que obran en autos que el tribunal recibió prueba sobre esos extremos. Así, el tribunal recibió prueba sobre las pérdidas que AFE podría sufrir. Además, en la inspección ocular observó la construcción en controversia, discutió los planos con los ingenieros de las partes y escuchó los argumentos del ingeniero Almeyda sobre las características de la propiedad que AFE construye. *Véase* apéndice del recurso de *certiorari*, págs. 876-83.

Del mismo modo, en la vista celebrada los días 20 y 21 de julio de 2006, el tribunal de instancia escuchó los argumentos de AFE sobre la alegada incuria de la Asociación y recibió prueba sobre dicha defensa. *Véase* transcripción de la vista, apéndice del recurso de *certiorari*, págs. 800-01. A estos efectos, AFE arguyó que es dueña de la propiedad J-42 desde el año 1983 y que en dicha residencia convive un grupo de mujeres solteras afiliadas a AFE desde el año 1987. En apoyo a dicha defensa, presentó un documento con el propósito de demostrar que, para el año 1996, la Asociación de Vecinos incluyó a la señora Eneida Álvarez (dama alegadamente afiliada a AFE) como residente de la propiedad J-42. Además, el tribunal de instancia tuvo ante su consideración una moción de desestimación y sentencia sumaria presentada el 14 de diciembre de 2005, en

la cual AFE esgrimió sus planteamientos sobre la alegada incuria de la Asociación de Vecinos.[14] También obran en autos las declaraciones juradas de varias mujeres que han vivido en la propiedad J-42. Entre éstas se encuentran las declaraciones juradas de las señoras Carmen Socorro Garay Rosa y Myriam Camacho González, a quienes AFE ofreció como testigos en la vista.[15] *Véase* autos originales del tribunal de primera instancia, tomo núm. 2.

En virtud de todo lo antes expuesto, forzoso es concluir que el tribunal de instancia no privó a AFE de su derecho a la celebración de una vista a los fines de presentar prueba a su favor. Contrario a la determinación del Tribunal de Apelaciones, resolvemos que AFE tuvo una oportunidad adecuada de presentar prueba en torno a la solicitud de *injunction* preliminar de la Asociación de Vecinos.

En este respecto, la opinión disidente aduce que el debido proceso de ley requiere la celebración de una vista evidenciaria antes de conceder o denegar una orden de

---

[14] En dicha moción AFE arguyó que un grupo de entre 6 y 8 mujeres ha residido en la propiedad J-42 desde el año 1987 y que, entre el período de tiempo comprendido entre el año 1987 y 2005, la Asociación de Vecinos no cuestionó el uso de la vivienda por eso grupo de mujeres. *Veáse* autos originales del tribunal de primera instancia, tomo núm. 3.

[15] En su declaración, la señora Socorro Garay indicó que vivió en la residencia J-42 desde el año 1987 hasta el 2005. Por su parte, la señora Camacho González indicó que comenzó a vivir en dicha propiedad en el año 1988. *Véanse* autos originales del tribunal de primera instancia, tomo núm. 2. También obran en el expediente del tribunal de primera instancia declaraciones juradas de las señoras Margarita Ivette Matos González, Ana María Riestra Carrión, María S. Carreras Miranda y Hannia Rivera Arévalo; damas que han vivido en la residencia J-42. *Id.*

*injunction* preliminar bajo la Regla 56 y concluye que esto no ocurrió en el presente caso pues el tribunal se negó a recibir cierta prueba testifical. Para ello, invoca nuestros pronunciamientos en *Rivera Rodríguez & Co. v. Stowell,* 133 D.P.R. 881 (1993)*.* Sin embargo, la opinión disidente no toma en consideración que las exigencias del debido proceso de ley dependen de las circunstancias particulares de cada caso. Así, el principio fundamental del debido proceso de ley es el derecho de toda persona a ser oído antes de ser despojado de un interés protegido. *Rivera Rodríguez & Co. v. Stowell, supra,* pág. 889. Como vimos, el tribunal de instancia le proveyó amplia oportunidad a los recurridos para ser oídos, por lo que se satisficieron las exigencias del debido proceso de ley. Los recurridos tuvieron amplia oportunidad para presentar su prueba y enfrentarse a la prueba presentada por los peticionarios. Además, el tribunal celebró una inspección ocular en la cual escuchó los planteamientos de los peritos de las partes. Es ineludible concluir entonces, que los recurridos no sufrieron una privación de sus intereses sin el debido proceso de ley.

Procedemos entonces, a examinar si abusó de su discreción el tribunal de instancia al conceder el *injunction* preliminar solicitado por la Asociación de Vecinos.

**B**

Una lectura de la resolución del Tribunal de Primera Instancia demuestra que, al dictar la orden de *injunction* que nos ocupa, dicho foro primario, 1) examinó la naturaleza de los daños que las partes sufrirían de concederse el remedio provisional solicitado; 2) auscultó la probabilidad de que la peticionaria prevalezca en los méritos; 3) consideró la probabilidad de que la reclamación se torne académica de no concederse el *injunction* preliminar; y 4)analizó el posible impacto que el remedio tendría en el interés público. Así, el tribunal hizo un balance justiciero de los intereses de las partes y de los méritos de la reclamación de la Asociación de Vecinos.

En primer lugar, luego de evaluar la prueba antes detallada, el Tribunal de Primera Instancia determinó que existía probabilidad de que la Asociación de Vecinos prevaleciera en los méritos puesto que la magnitud de la obra indica que la propiedad construida podría ser una estructura de más de una vivienda y que incluso podría ser una estructura con fines institucionales. En segundo lugar, luego de sopesar los intereses en controversia, el tribunal de instancia determinó que el daño que la Asociación de Vecinos sufriría ante una violación a las servidumbres en equidad de la Urbanización Villa Caparra Sur justificaba otorgar la orden de *injunction* preliminar.[16]

---

[16] Es menester resaltar que el tribunal de instancia aclaró que era innecesario probar la existencia de daños irreparables puesto que bastaba probar una violación a la

Al tomar estas determinaciones, el tribunal tomó en cuenta nuestro pronunciamiento en *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra*, caso en el que sostuvimos la validez de las servidumbres en equidad que gravan la Urbanización Villa Caparra Sur. Así, el tribunal hizo un balance entre los daños que ambas partes estaban expuestas a sufrir y concluyó que los daños por la alegada violación a la servidumbre justificaban paralizar como medida en aseguramiento de sentencia. Además, luego de examinar los planteamientos de AFE sobre la defensa de incuria, el tribunal de instancia determinó que era improbable que AFE prevaleciera con dicha defensa. Sobre esto, explicó que la defensa de incuria no procede por el mero pasar del tiempo, sino que requiere examinar la justificación de la dilación, el perjuicio sobre las partes y la naturaleza de los intereses involucrados. *Véanse Pueblo v. Tribunal Superior*, 81 D.P.R. 904 (1960); *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); *Rivera v. Depto. de Servicios Sociales,* 132 D.P.R. 240 (1992).

---

*servidumbre*. Apéndice del recurso de *certiorari*, págs. 27-29. A pesar de ello, el tribunal luego concluyó que los daños que la Asociación de Vecino sufriría serían *irreparables*. Aun cuando no es necesario en esta causa de acción probar la existencia de daños irreparables, dicha expresión no constituye un error que amerite revocar la determinación del foro primario. Tampoco implica, como aduce AFE, que el tribunal emitió el *injunction* bajo la Regla 57 de Procedimiento Civil. Como expresamos, el tribunal reconoció que era innecesario probar la existencia de daño irreparable. Entendemos que su expresión en torno a que los daños eran irreparables, simplemente es un reflejo de la primacía que dicho foro le confirió a los daños que la Asociación está expuesta a sufrir en este caso.

En tercer lugar, el tribunal de instancia concluyó que existe riesgo de que el reclamo de la Asociación de Vecinos advenga académico de no concederse el remedio y que la Asociación de Vecinos logró establecer la presencia de un impacto adverso sobre el interés público de no paralizarse la obra.

**A los únicos efectos de una orden de *injunction* preliminar bajo la Regla 56 de Procedimiento Civil,** resolvemos que el Tribunal de Primera Instancia no abusó de su discreción al resolver que la Asociación tenía una reclamación meritoria que justificaba conceder un remedio provisional en aseguramiento de sentencia y al determinar que los daños sufridos por la Asociación de Vecinos justificaban dicha medida a la luz de los criterios de academicidad e impacto sobre el interés público. En ausencia de abuso de discreción del tribunal al sopesar los intereses de las partes, este Tribunal no debe intervenir con dicha determinación.

## VII

En virtud de lo anterior, reconsideramos nuestro anterior dictamen en el caso de epígrafe. Procede revocar la sentencia del Tribunal de Apelaciones y reinstalar la orden de *injunction* preliminar dictada por el Tribunal de Primera Instancia al amparo de la Regla 56 de Procedimiento Civil.

Antes de finalizar, debemos puntualizar que procede conceder el remedio provisional solicitado sin la previa

prestación de fianza. Como adelantamos, la Regla 56.3 permite conceder dicho remedio sin exigir la prestación de fianza cuando obren en autos documentos públicos que acrediten la existencia de una obligación legalmente exigible. 32 L.P.R.A. Ap. III, R. 56.3. En el presente caso, la escritura pública que evidencia la existencia de la servidumbre en equidad y las certificaciones registrales del predio en controversia, son documentos públicos firmados ante una persona autorizada para administrar juramento. Las mismas acreditan la existencia de una obligación legalmente exigible, la cual además es oponible a la Asociación de Fomento Educativo. Adviértase además, que en *Asoc. V. Villa Caparra v. Iglesia Católica*, *supra,* validamos la vigencia de la servidumbre en equidad aquí en controversia.

En fin, ante la existencia de prueba fehaciente y auténtica sobre la existencia de una obligación legal oponible a la Asociación de Fomento Educativo, procede conceder el remedio provisional de *injunction* sin exigir la prestación de fianza.

Sobre la concesión de un remedio de *injunction* preliminar y el requisito de prestación de fianza, la opinión disidente invoca a *Rivera Rodríguez & Co. v. Stowell, supra*, para concluir que en toda solicitud remedio provisional que se presente en un pleito cuyo fin sea la concesión de un *injunction* permanente, el debido proceso de ley exige el pago de una fianza. Como secuela de ello, se

arguye que estas solicitudes se deben tramitar al amparo de la Regla 57 de Procedimiento Civil y no bajo las disposciones de la Regla 56 que eximen al peticionario del pago de fianza en ciertas circunstancias excepcionales.

El razonamiento de la opinión disidente ignora que en *Rivera Rodríguez & Co. v. Stowell, supra,* declaramos inconstitucional la Regla 56.4, **en la medida en que permitía que un tribunal expidiera una orden de embargo sin celebrar una vista previa.** Sobre la prestación de fianza, indicamos que sin duda ello "reduce los efectos o consecuencias de una declaración errónea". *Id,* pág. 899. Sin embargo, no indicamos que el debido proceso de ley exige la prestación de fianza como condición a la expedición de una orden provisional.

Es incuestionable que la Regla 57 exige la prestación de fianza antes de emitir un *injunction* preliminar. Sin embargo, ello no justifica sugerir que el emitir una *injunction* preliminar al amparo de la Regla 56 de Procedimiento Civil, sin la previa prestación de fianza, implica una privación de la propiedad sin el debido proceso de ley.[17]

---

[17] La consecuencia lógica de la posición disidente sería declarar inconstitucional las disposciones de la Regla 56.3 que eximen al promovente de un remedio provisional del pago de fianza en circunstancias excepcionales. Más aún, ¿cuál es la justificación para concluir, como hace la opinión disidente, que cuando se solicita una orden de hacer o desistir de hacer en un pleito cuyo objeto es obtener un *injunction* permanente, el debido proceso de ley exige que la solicitud se tramite al amparo de la Regla 57 con la exigencia de la fianza, mientras que cuando se solicite dicho remedio en un pleito cuyo objeto principal no sea

En primer lugar, no podemos olvidar que la esencia de protección del debido proceso de ley es que el procedimiento seguido sea justo y equitativo. *Rodríguez & Co. v. Stowell, supra*, pág. 888. Sin embargo, ello se determina a partir de las circunstancias de cada caso. Por tanto, antes de determinar que una solicitud de *injunction* preliminar exige por imperativo del debido proceso de ley que se preste fianza, se debe examinar el tipo de reclamo del que se trata y las garantías procesales provistas en cada caso.

Un examen de las disposciones de la Regla 56.3 demuestra que dicha Regla exime al promovente de prestar fianza en ciertas instancias limitadas y excepcionales. En lo que nos concierne en el presente caso, dicha Regla releva al promovente de prestar fianza cuando surja de un documento público o privado que la obligación es legalmente exigible. Es decir, requiere que el promovente acredite debidamente que tiene un previo interés en exigir el cumplimiento de una obligación que surge de un documento público. Mediante este requisito entonces, se minimiza el riesgo de una determinación errónea que afecte de forma provisional, los derechos de la parte que sufre la orden. Tomando en cuenta que el reclamo de la Asociación de Vecinos se fundamenta en el interés de hacer cumplir una servidumbre en equidad válida y debidamente inscrita, y

_____

obtener un *injunction*, se puede recurrir a la Regla 56 con sus excepciones en cuanto a la fianza? La ausencia de una justificación para este tratamiento dispar denota, a nuestro juicio, su improcedencia.

toda vez que para otorgar el *injunction* preliminar en un caso como el presente se exige que se demuestre la probabilidad de que el promovente demuestre en los méritos la violación a dicha servidumbre, entendemos que dichas exigencias minimizan el daño que una determinación errónea podría tener en la parte que sufre la orden provisional.

Adviértase además, que el proceso sumario que invalidamos en *Rivera Rodríguez & Co. v. Stowell, supra,* privaba a la parte del derecho a una vista y permitía que se emitiera una orden de embargo a partir de un examen de las alegaciones incluidas en la demanda y en las mociones sometidas al tribunal. Contrario a ello, en el procedimiento que rige la concesión de un *injunction* preliminar bajo la Regla 56, las partes tienen el beneficio de comparecer a una vista y luego de ello, la regla permite que se conceda el remedio, aplicando los criterios antes expuestos.

Es indudable que los parámetros mínimos del debido proceso de ley rigen la concesión de un *injunction* preliminar en un pleito en el que se invocan las disposiciones de una servidumbre en equidad. En estos casos, como adelantamos, se afecta provisionalmente el interés propietario de la parte que sufre la orden. En atención e ello, el estándar de adjudicación de la orden provisional provee salvaguardas sustantivas dirigidas a evitar que una determinación errónea le prive de sus intereses. Así, el tribunal debe quedar convencido de que

el promovente tiene probabilidad de prevalecer en los méritos –**luego de celebrar una vista a esos efectos**– y que el balance de los intereses justifica la concesión del remedio provisional. Además, el trámite judicial para la concesión de la orden le provee a las partes una oportunidad de presentar sus planteamientos y la evidencia que los sustenta antes de que se conceda o deniegue el remedio provisional.

Se dictará sentencia de conformidad con lo antes expuesto.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Vecinos de Villa Caparra Sur, Inc., *et al*<br>        Peticionarios<br><br>             v.<br><br>Asociación de Fomento Educativo, Inc., t/c/c Association for Educational Development, Inc.<br>        Recurridos<br><br>             v.<br><br>Municipio Autónomo de Guaynabo p/c/d su Alcalde, el Hon. Héctor O'Neill García<br>Parte Demandante No Recurrida<br><br>             v.<br><br>César T. Andréu Megwinoff; *et al*<br>Peticionarios-Terceros Demandados | CC-2006-1063 |

SENTENCIA
*(EN RECONSIDERACIÓN)*

San Juan, Puerto Rico, a 13 de marzo de 2008

Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente, reconsideramos nuestro dictamen del 20 de noviembre de 2007 y revocamos la sentencia emitida por el Tribunal de Apelaciones. Se reinstala en todos sus efectos la orden de *injuction* preliminar dictada por el Tribunal de Primera Instancia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con opinión escrita a la cual se le une el Juez Asociado señor Rivera Pérez.


                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Vecinos de Villa
Caparra Sur, Inc. *et al.*

Peticionarios


V.                    CC-2006-1063    Certiorari

Asociación de Fomento Educativo
Inc., *et al.*

Recurridos


Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON a la cual se une el Juez Asociado SEÑOR RIVERA PEREZ.


San Juan, Puerto Rico, a 13 de marzo de 2008.

En noviembre de 2007, por el Tribunal estar igualmente dividido, confirmamos la sentencia del Tribunal de Apelaciones que dejó sin efecto la paralización provisional de las obras de construcción de la Asociación de Fomento Educativo, Inc. Asociación de Vecinos de Villa Caparra Sur, Inc. v. Asociación de Fomento Educativo, Inc. res. 20 de noviembre de 2007, 2007 T.S.P.R. 203. A raíz del fallecimiento del compañero Juez Asociado señor Fuster Berlingeri, una mayoría acoge la solicitud de reconsideración presentada por la Asociación de Vecinos Villa Caparra Sur, Inc. y reinstala el *injunction* preliminar dictado por el foro de instancia bajo el fundamento de que éste es un recurso ordinario, eximiendo a estos últimos de

cumplir con el pago de la fianza correspondiente conforme a la Regla 57.3 de Procedimiento Civil. 32 L.P.R.A. Ap. III, R.57.3. Por entender que un *injunction* para vindicar una servidumbre en equidad es un recurso extraordinario que requiere el pago de fianza previa y que, por tanto, no procede la mencionada reinstalación, disentimos.

## I

Los hechos y el transcurso procesal un tanto accidentado de este caso ya han sido objeto de discusión por este Tribunal en la sentencia emitida en Asociación de Vecinos de Villa Caparra Sur, Inc. v. Asociación de Fomento Educativo, Inc., *supra*. En la moción de reconsideración presentada por la Asociación de Vecinos de Villa Caparra Sur, Inc. (en adelante, la Asociación de Vecinos), ésta alega que al caso de autos le aplica la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.56, sobre remedios provisionales en aseguramiento de sentencia, la cual faculta a los tribunales a expedir órdenes para hacer o desistir de hacer cualquier acto en específico y a eximir al peticionario del requisito de fianza en determinadas circunstancias. Reglas 56.3 y 56.5 de Procedimiento Civil, *supra*. Dicha afirmación en esta etapa procesal es realmente sorprendente y preocupante, pues en esencia invocan ante nos un remedio que nunca solicitaron en el foro de instancia.

De los autos se desprende que en todo momento la solicitud de la Asociación de Vecinos ante el Tribunal de Primera Instancia para hacer valer la servidumbre en equidad de la urbanización Villa Caparra Sur iba dirigida a que se

concediera un *injunction* preliminar conforme a los criterios específicos y extraordinarios establecidos por la Regla 57 de Procedimiento Civil, *supra*, y la Ley de Injunction de 1906. 32 L.P.R.A. Secs. 3521-3533. En efecto, el foro de instancia expidió una orden de *injunction* preliminar para ordenar la paralización de la obra de construcción de la Asociación de Fomento Educativo (en adelante, la AFE) bajo la referida Regla 57 y los criterios extraordinarios que establece la ley y la jurisprudencia pertinente para este remedio, y no como un remedio provisional ordinario en aseguramiento de sentencia bajo la Regla 56.

No obstante, acudió a la Regla 56 únicamente para eximir a la Asociación de Vecinos del requisito de fianza correspondiente que ineludiblemente, y sin excepción alguna, impone la Regla 57.3 ante la expedición de un *injunction* preliminar de esta naturaleza. Es decir, **el juez de instancia trasladó arbitrariamente las excepciones a la fianza que provee la Regla 56.3 para los remedios ordinarios en aseguramiento a un *injunction* preliminar de carácter extraordinario, con el propósito de relevar a la Asociación de Vecinos de la prestación de fianza previa conforme a lo requerido por la Regla 57, requisito que los demandantes hubiesen podido cumplir con gran facilidad y que no era oneroso para ellos.**

La posición asumida por la Asociación de Vecinos, y hoy acogida por una mayoría de este Tribunal para reinstalar el *injunction* preliminar, atenta contra la seguridad jurídica de nuestro ordenamiento, desvirtúa la intención legislativa de

las Reglas de Procedimiento Civil e ignora los rasgos divergentes del *injunction* y de los remedios provisionales en aseguramiento de sentencia, así como el desarrollo histórico y doctrinal de ambas figuras procesales en nuestro estado de derecho. Asimismo, la Opinión en Reconsideración es contraria a nuestro sistema procesal centenario y altera la ley en referencia al *injunction* y los demás remedios provisionales por fíat judicial. Ello, en detrimento del debido proceso de ley y los derechos sustantivos de la AFE, que ostenta indudablemente un interés propietario sobre la construcción en controversia.

La Opinión del Tribunal parte de la premisa equivocada que tanto la Regla 56 como la Regla 57 de Procedimiento Civil, *supra*, proveen indistintamente para la concesión de una orden de hacer o desistir de hacer como remedio en aseguramiento de sentencia mediante una duplicidad de mecanismos redundantes. Sin embargo, un análisis riguroso de estas figuras procesales apunta claramente a que ambas siempre han sido consideradas como remedios distintos y delimitados por nuestro ordenamiento procesal desde comienzos del siglo pasado. Veamos.

## II

### A

A finales del siglo diecinueve, el ordenamiento procesal civil en Puerto Rico se regía por la Ley de Enjuiciamiento Civil española de 1881, cuya aplicación se hizo extensiva a Puerto Rico en 1886. Véase D. Rivé Rivera, <u>Recursos Extraordinarios</u>, 2da edición, 1996, pág. 8. El Título XIV de

la referida ley establecía varios remedios provisionales para el aseguramiento de sentencias. No obstante, este esquema procesal no contaba con un recurso análogo al *injunction*, pues dicha figura era ajena a la tradición civilista.[18] Tras producirse el cambio de soberanía en 1898, el *injunction* -un remedio que proviene del sistema de equidad del "common law"- se incorporó al sistema de derecho puertorriqueño por primera vez el 1 de marzo de 1902, mediante la Ley para Autorizar los Interdictos Prohibitorios (Injunctions).[19] *Id.* Curiosamente, ese mismo día la Asamblea Legislativa también aprobó la Ley Para Asegurar la Efectividad de las Sentencias, la cual incorporó y estructuró los remedios provisionales en aseguramiento de sentencia, de manera similar a lo dispuesto en el Título XIV de la Ley de Enjuiciamiento Civil Española de 1886. 32 L.P.R.A. Sec. 1070 (derogada).

Poco después se reformuló la figura del *injunction* mediante la Ley de 8 de marzo de 1906, la cual derogó la Ley de 1 de marzo de 1902 autorizando los *injunctions*. 32 L.P.R.A. Secs. 3521-3533. Dicha ley, la cual aún está

---

[18] Véase J. H. Merryman, The Civil Law Tradition, Stanford University Press, 1969, págs. 57, 130, citado en D. Rivé Rivera, Recursos Extraordinarios, *supra*, pág. 8. De hecho, la dicotomía entre el derecho y la equidad (en el sentido anglosajón del "common law") siempre ha sido ajena a nuestro sistema de derecho, pero la misma ha influenciado nuestra jurisprudencia y nuestras leyes en cuanto a la figura del *injunction*. Véase Montilla v. Van Syckel, 8 D.P.R. 160, 194 (1905).

[19] Ello, dado que en Puerto Rico hemos ido adoptando progresivamente el sistema procesal civil norteamericano. Guzmán Matías v. Vaquería Tres Monjitas, Inc., res. 14 de diciembre de 2006, 2006 T.S.P.R. 187.

vigente en la actualidad, constituyó una enmienda al Código de Enjuiciamiento Civil de 1904, que a su vez sustituyó en su totalidad el ordenamiento procesal instituido por la Ley de Enjuiciamiento Civil española de 1886.

Por su parte, el Artículo 3 de la referida Ley de Injunction de 1906 requiere que el demandante demuestre que el acto que se quiere paralizar ocasionaría daños irreparables o que el peticionario carece de un remedio adecuado en ley. Véase 32 L.P.R.A. Secs. 3523(2), 3523(4). Desde ese momento, y hasta el día de hoy, este Tribunal se remitió expresamente a los principios tradicionales de la equidad del "common law" para interpretar la figura del *injunction* como un recurso extraordinario, independiente y separado al remedio provisional de hacer y no hacer. Véase Franco v. Oppenheimer, 40 D.P.R. 153 (1929); Glinés v. Matta, 19 D.P.R. 409 (1913); D. Rivé Rivera, *supra*, págs. 9, 17-20.

Esta dicotomía legislativa entre el *injunction* provisto por el Código de Enjuiciamiento Civil y los remedios provisionales reconocidos por la Ley Para Asegurar la Efectividad de las Sentencias de 1902 –que al igual que la Regla 56 de Procedimiento Civil, *supra*, permitía a los tribunales emitir órdenes de hacer y no hacer– condujo a este Tribunal a tratar de delimitar el alcance y la interacción entre ambos estatutos. En Municipio de Río Piedras v. Corte de Distrito, 40 D.P.R. 37 (1929), expresamos que aun cuando algunas de las disposiciones de ambas leyes tenían el mismo objetivo, la Ley Para Asegurar

la Efectividad de las Sentencias de 1902 no se debía interpretar "para sustituir la ley de injunction y evadir sus limitaciones […]".

Varias décadas después, en el año 1943, se aprobaron unas Reglas de Enjuiciamiento Civil que eran básicamente una traducción de las Reglas de Procedimiento Civil Federal. 32 L.P.R.A. Ap. I (derogado); Guzmán Matías v. Vaquería Tres Monjitas, Inc., supra. No obstante, el nuevo cuerpo procesal no derogó el Código de Enjuiciamiento Civil de 1904 —ni, por tanto, la Ley de Injunction de 1906— provocando confusión y tensión entre varias normas que regulaban las mismas figuras e instituciones de manera paralela y conflictiva. En lo pertinente, el injunction se regulaba por los Artículos 676-689 del Código y por la nueva Regla 65 de Enjuiciamiento Civil sin que se estableciera cuál prevalecería en caso de discrepancia. A su vez, los demás remedios provisionales —incluyendo los remedios subsidiarios de hacer y no hacer en aseguramiento— aún se regían por la Ley Para Asegurar la Efectividad de las Sentencias de 1902. Véase D. Rivé Rivera, supra, pág. 9.

Para atender la confusa dicotomía establecida por el ordenamiento procesal de aquel momento, este Tribunal nombró un Comité Consultivo en 1952 con la tarea de redactar una legislación procesal civil integrada que sustituyera ambos cuerpos procesales. Id. Dos años más tarde, dicho comité sometió un Informe con un proyecto de reglas de procedimiento civil que proponía la fusión del injunction con los demás remedios provisionales en aseguramiento de

sentencia, mediante la disposición que hoy día conocemos como la Regla 56. Véase Comité Consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, Borrador del Proyecto de Reglas de Enjuiciamiento Civil, Tribunal Supremo, 1954. En los comentarios del mencionado borrador, el Comité adujo lo siguiente en cuanto a la coexistencia hasta ese momento de la Ley para Asegurar la Efectividad de las Sentencias de 1902 y la Ley de Injunction de 1906 (Art. 677 del Código de Enjuiciamiento Civil):

> La existencia de estas dos disposiciones legales ha motivado gran confusión según revela nuestra jurisprudencia. Cuando por un lado se ha solicitado por un reclamante una orden del tribunal para que la otra parte se abstenga de hacer determinados actos, basándose en las disposiciones de la Ley Para Asegurar la Efectivdad de las Sentencias, el tribunal ha sostenido que dicha medida no procede porque equivale un injunction. Cuando por el contrario se ha solicitado la misma medida basándose en la ley de injunction, se ha sostenido por el tribunal que la misma no procede porque existe un remedio adecuado en ley. (Citas omitidas). Comité Consultivo sobre el Proyecto de Reglas de Enjuiciamiento Civil, *supra*, págs. 146-147.

La propuesta presentada por el Comité Consultivo tenía la intención de cambiar el enfoque del ordenamiento procesal en cuanto a los referidos remedios, con una normativa amplia y abarcadora que concediera a los tribunales la facultad de expedir cualquier orden provisional para asegurar la sentencia en cualquier pleito. *Id.* A diferencia de la interpretación normativa sobre el *injunction* hasta ese momento, el Comité proponía que se concediera dicho remedio al amparo de la Regla 56 exclusivamente sin la necesidad de que el demandante demostrara que carecía de lo que en

equidad se conoce como un "remedio adecuado en ley" y sin que se tuviera que ponderar la aplicación de criterios extraordinarios como la posible irreparabilidad de los daños alegados o el posible impacto en el interés público. A la luz de ello, el Comité también propuso la derogación de la Ley de Injunction de 1906 y la Regla 65 de Enjuiciamiento Civil, salvo algunos articulados para guiar su expedición, pues entendía que el *injunction* no debía tener un carácter verdaderamente extraordinario. Véase Comité Consultivo, *supra*, págs. 141-144, 175; D. Rivé Rivera, *supra*, pág. 12. [20]

**No obstante lo anterior, este Tribunal no acogió plenamente las recomendaciones del Comité Consultivo mencionadas anteriormente. Específicamente, rechazó la propuesta de que la Regla 56 debía ser el mecanismo exclusivo para conceder cualquier remedio provisional. Aunque el Tribunal aprobó la Regla 56.5 de Procedimiento Civil,** *supra,* **para facultar a los tribunales a expedir órdenes de hacer o desistir de hacer en aseguramiento de sentencia, entendió que el** *injunction* **ameritaba su propio articulado para supuestos en que fuese imprescindible acudir a su naturaleza particular y extraordinaria. Por tanto, al aprobar las Reglas de Procedimiento Civil y remitirlas a la**

---

[20] Cabe señalar que en la actualidad nos encontramos ante un proceso similar, pues en septiembre de 2005 nombramos un Comité Asesor Permanente de Reglas de Procedimiento Civil para revisar el esquema procesal vigente. Éste nos sometió un Informe y proyecto de reglas en la Conferencia Judicial celebrada en febrero de 2008 que recomienda mantener la dicotomía histórica entre los remedios provisionales de la Regla 56 y el *injunction* como remedio extraordinario bajo la Regla 57. Proyecto de Reglas de Procedimiento Civil, 2008, págs. 119, 121-122.

**Asamblea Legislativa el 13 de enero de 1958, este Tribunal incluyó una regla específica sobre *injunctions* -a saber, la Regla 57- tomada literalmente de la Regla 65 de Procedimiento Civil Federal.** *Id.*

Dichas reglas no fueron enmendadas por la Legislatura, por lo que entraron en vigor el 31 de julio de 1958 según las redactó y aprobó el Tribunal Supremo, a tenor con lo dispuesto por el Artículo V, Sección 6 de la Constitución del Estado Libre Asociado de Puerto Rico. Art. V. Sec. 6, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999. Como resultado, las Reglas de Procedimiento Civil aprobadas por este Tribunal en 1958 tuvieron el efecto de flexibilizar los remedios provisionales en aseguramiento, pero perpetuaron la dicotomía histórica entre éstos y el *injunction*. Reglas de Procedimiento Civil de 1958, 32 L.P.R.A. App. II, R. 56, 57. Por otro lado, la última revisión de las Reglas de Procedimiento Civil que se llevó a cabo en 1979 no alteró dicho ordenamiento. Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. App. III R. 56, 57.

Así, pues, se mantuvo incólume la posición de que para obtener un *injunction* como remedio principal y extraordinario hay que recurrir forzosamente a la Regla 57 de Procedimiento Civil, *supra*, aun desde su etapa preliminar. De hecho, la Regla 55 del referido cuerpo procesal establece que "{l}a expedición de un *injunction* se regirá por lo dispuesto en la Regla 57 y en las leyes especiales aplicables." Obviamente, dicho mandato no estaba incluido en las recomendaciones del Comité Consultivo de

1954.[21] Véase además, <u>Corujo Collazo v. Viera Martínez</u>, 111 D.P.R. 552, 556 (1981).

**Por tanto, y contrario a lo que concluye la Opinión del Tribunal, los comentarios del mencionado Comité no pueden ser utilizados como fundamento de la intención legislativa de las Reglas de Procedimiento Civil de 1958 en cuanto a los remedios provisionales y el *injunction*. Ello es más evidente dado que este Tribunal descartó la recomendación de derogar la Ley de Injunction de 1906 y la Regla 65 de 1943, al añadir la Regla 57 para regular de forma expresa el *injunction* <u>preliminar</u> como un remedio provisional extraordinario, y el *injunction* <u>permanente</u> como un remedio principal extraordinario. Así las cosas, se desprende del récord histórico que este Tribunal no siguió las recomendaciones del Comité en referencia a esta normativa, pues formuló un esquema que le confirió nuevamente a los tribunales dos mecanismos paralelos e independientes para implantar su facultad de conceder remedios provisionales, dependiendo de la naturaleza de la acción incoada.**

**B**

Por otro lado, nuestros pronunciamientos sobre el *injunction* preliminar -incluso los posteriores a la aprobación de este esquema procesal- han sido consistentes en remitirse a la normativa federal y a los criterios de

---

[21] A su vez, cabe resaltar que la actuación de este Tribunal al no acoger plenamente las recomendaciones del Comité para eliminar la mencionada dicotomía entre el *injunction* y los demás remedios provisionales ha sido objeto de críticas por parte de algunos comentaristas. Véase D. Rivé Rivera, *supra*, págs. 13-15.

equidad del "common law" que rigen este recurso extraordinario. En Puerto Rico Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975), aclaramos que al decidir si expide o deniega un *injunction* preliminar, el tribunal de instancia debe considerar la naturaleza de los daños que puedan ocasionarse de expedir o denegar el recurso; la irreparabilidad de los daños o la ausencia de un remedio adecuado en ley; el balance comparativo entre dicho daño y el que se le causará a la otra parte de dejar sin efecto la paralización; la probabilidad de que la controversia se torne académica; la probabilidad de que el promovente prevalezca en los méritos; y el posible impacto sobre el interés público. Véanse además, Misión Industrial v. A.A.A., 142 D.P.R. 656, 679-680 (1997); Municipio de Ponce v. Gobernador, 136 D.P.R. 776 (1994); Cobos Liccia v. DeJean Packing Co., Inc., 124 D.P.R. 896, 902 (1989); Systema de P.R., Inc. v. Interface Int'l, 123 D.P.R. 379 (1989); A.P.P.R. v. Tribunal Superior, 103 D.P.R. 903, 906 (1975).[22]

Así las cosas, resulta evidente que la Regla 57 de Procedimiento Civil, *supra*, se incorporó a nuestro ordenamiento para regular el *injunction* preliminar y permanente respectivamente como recursos extraordinarios, guiados por los criterios derivados de la equidad en virtud

---

[22] De hecho, en el Informe y proyecto de reglas que nos sometió el Comité Asesor Permanente de Reglas de Procedimiento Civil en febrero de 2008 se recomienda incorporar expresamente los mencionados criterios extraordinarios de P.R. Telephone Co. v. Tribunal Superior, *supra,* a la Regla 57. Véase Informe de Reglas de Procedimiento Civil, 2008, págs. 674-675.

de las propias leyes relacionadas al *injunction*. A tenor con ello, en esta ocasión reiteramos que las disposiciones estrictas de la Regla 57 y su jurisprudencia aplicable le aplican a todo litigante que solicita un *injunction* como remedio principal, las cuales -en lo pertinente- **siempre exigen la prestación de fianza para la concesión del mismo en su etapa preliminar** y cuyas órdenes *ex parte* tienen un término de vigencia máxima de veinte días. Regla 57.3 de Procedimiento Civil, *supra*.

Al examinar esta dicotomía procesal, el profesor Rafael Hernández Colón comenta en su obra <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Civil</u> que la Regla 57.3 de Procedimiento Civil, *supra*, no trata al *injunction* preliminar como una medida de aseguramiento de sentencia, por lo que "exige que cuando se solicita una orden o *injunction* preliminar, el solicitante tiene que prestar fianza para garantizar los daños y perjuicios que pueda causar. Esta Regla establece un procedimiento especial para ejecutar la fianza y no está sujeta a las excepciones de la R.56, 1979 [respecto a los remedios provisionales]". R. Hernández Colón, <u>Derecho Procesal Civil</u>, § 1504, págs. 159-160 (2007).

De otra parte, reconocemos nuevamente que si lo que el demandante solicita es una "orden de no hacer" como remedio subsidiario, o cualquier otro remedio provisional en aseguramiento de sentencia a tenor con la Regla 56.5 de Procedimiento Civil, *supra*, la misma puede acogerse a los requisitos más flexibles contenidos en esta última regla, la

cual permite emitir dichas órdenes sin fianza y sin límites de tiempo. D. Rivé Rivera, *supra*, pág. 15. Es decir, si la solicitud del remedio se plantea en una demanda cuyo objeto principal es el *injunction* mismo, rige la Regla 57 de forma expresa y específica, y no se podría admitir excepción alguna al requisito de fianza previa. A su vez, si se solicita una orden de hacer o no hacer como remedio supletorio para asegurar la sentencia en el contexto de un pleito cuyo objeto principal no es la concesión de un *injunction*, se pueden aplicar las disposiciones más flexibles de la Regla 56, incluyendo las excepciones para el requisito de fianza que establece la Regla 56.3. R. Hernández Colón, Derecho Procesal Civil, *supra*, §. 5704, pág. 464.[23]

A la luz de lo anterior, la concesión del remedio provisional correspondiente depende del objetivo principal de la demanda que, a su vez, tiene que circunscribirse a la

---

[23] Además, es menester señalar que estos enfoques diferentes en cuanto a la fianza y las mencionadas figuras se originaron cuando comenzó la dicotomía entre el *injunction* y los remedios provisionales ordinarios a principios del siglo veinte. El Artículo 7 de la Ley de Injunction de 1906 establece que "[n]o se librará auto de interdicto prohibitorio o entredicho, mientras el peticionario o demandante no haya constituido fianza garantizada por dos fiadores, cuya cuantía y suficiencia de garantía fijará el tribunal que haya de librar el auto de interdicto o mandamiento". Por otro lado, el Artículo 4 de la Ley Para Asegurar la Efectividad de Sentencias de 1902 disponía que "[s]i consta claramente en documento auténtico que la obligación es exigible, el tribunal decretará el aseguramiento sin fianza. En cualquier otro caso, exigirá fianza para decretarlo […]". Claramente, la Regla 56 de Procedimiento Civil, *supra*, no alteró para nada la diferenciación contundente en cuanto a la flexibilidad contrastante del requisito de fianza entre ambas figuras procesales. La Regla 57, al igual que la Ley de Injunction de 1906, no admite excepción al requisito de fianza previa.

regla procesal aplicable según las circunstancias concretas y particulares de cada caso. De lo contrario, se estaría dejando al arbitrio del tribunal de instancia la aplicación de cualquiera de las dos reglas, a pesar de que el legislador y este Tribunal Supremo expresamente vislumbraron una clara distinción entre ambas normativas procesales al aprobar las Reglas de Procedimiento Civil de 1958 y de 1979.

**III**

Del historial anteriormente discutido es evidente que éste es el derecho positivo vigente y debería ser la ley en este caso, donde los derechos propietarios de las partes están en controversia. De hecho, esta dicotomía entre el *injunction* y los demás remedios provisionales forma parte de las Reglas de Procedimiento Civil aplicables a este caso, por lo que una actuación judicial que contravenga sus propósitos sería inválida y revisable de su faz. Es por ello **que cambiar las reglas del juego desde este estrado apelativo constituye una violación por este Tribunal a principios básicos y fundamentales de la seguridad jurídica en nuestro ordenamiento, cimentados en la garantía constitucional del debido proceso de ley.**

Sabido es que el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, al igual que las Enmiendas V y XIV de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. En lo pertinente, el debido proceso de ley procesal le impone al Estado y a los tribunales la

obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo, imparcial y equitativo. Véase Rivera Rodríguez & Co. v. Lee Stowell, 133 D.P.R. 881, 887-888 (1993); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987).

Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. Rivera Rodríguez & Co. v. Lee Stowell, supra; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987). Una vez se cumple esta exigencia, hay que determinar cuál es el procedimiento exigido por el ordenamiento vigente. Rivera Rodríguez & Co. v. Lee Stowell, supra; Rivera Santiago v. Srio. de Hacienda, supra. Aunque diversas situaciones pueden requerir diferentes tipos de procedimientos, en todo memento prevalece el requisito general de que el proceso gubernamental o judicial debe ser justo e imparcial. Rivera Rodríguez & Co. v. Lee Stowell, supra; Rivera Santiago v. Srio. de Hacienda, supra.

En Rivera Rodríguez & Co. v. Lee Stowell, supra, pág. 888, adoptamos los tres (3) criterios que deben sopesarse al determinar cuál es el proceso debido para privarle a un individuo de algún derecho protegido, conforme a lo establecido por el Tribunal Supremo Federal en Mathews v. Eldridge, 424 U.S. 319 (1976). A saber, éstos son los siguientes: (1) se debe determinar cuáles son los intereses individuales afectados por la acción oficial; (2) el riesgo

de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Véase además, Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982).

A su vez, este Tribunal ha reconocido que los requisitos constitucionales del debido proceso de ley son aplicables a los procedimientos de embargo y prohibición de enajenar. Rivera Rodríguez & Co. v. Lee Stowell, *supra*, pág. 890; Domínguez Talavera v. Tribunal Superior, 102 D.P.R. 423 (1974). En Rivera Rodríguez & Co. v. Lee Stowell, *supra*, **afirmamos que cuando un acreedor usa los mecanismos provistos por el Estado para tomar posesión de una propiedad de su alegado deudor, este último es privado de un interés constitucional significativo de propiedad. Al Estado establecer procedimientos de embargo para que una persona los utilice para inmiscuirse en la propiedad ajena mediante las Reglas de Procedimiento Civil, se configura un "state action" sustancial que justifica la aplicación de la cláusula del debido proceso**. *Id.* Asimismo, para salvaguardar la garantía al debido proceso de ley cuando la parte demandante intenta interferir con el interés propietario de la parte demandada a través de la Regla 56 de Procedimiento Civil, *supra*, es imprescindible la celebración de una vista plenamente evidenciaria conforme a los rigores procesales de la referida cláusula constitucional.

De manera análoga, es menester concluir que un *injunction* para vindicar una servidumbre en equidad se debe regir por las exigencias constitucionales del debido proceso de ley. Para hacer valer una condición restrictiva se utilizan los mecanismos del Estado –a saber, el *injunction*– frente a un interés propietario. **El remedio provisional del *injunction* preliminar para tales propósitos tiene las mismas repercusiones que una orden de embargo, pues existe una probabilidad peligrosa de que una determinación errónea prive al dueño de su interés propietario sobre el bien. Rodríguez & Co. v. Lee Stowell, *supra*, pág. 898. Asimismo, el requisito de fianza previa a la expedición de un injunction preliminar –según requiere claramente la Regla 57.3 de Procedimiento Civil, *supra*– forma parte integral de las garantías del debido proceso que ordenan nuestras reglas procesales.**

Por tanto, la expedición de un *injunction* preliminar para hacer valer una servidumbre en equidad sin requerir fianza previa aumenta los riesgos de que el tribunal de instancia emita una  determinación errónea que prive injustamente al dueño del disfrute sobre su propiedad, sin que se provea garantía alguna de que la parte demandante responderá por los daños ocasionados de no prevalecer finalmente en el pleito. Ello en vista de que el mero examen preliminar por el juez de instancia de las alegaciones y la prueba, en esa etapa prematura de los procedimientos, no es suficiente para que éste pueda hacer una apreciación realista y contundente al expedir el *injunction* sin la garantía colateral de la

fianza previa que ordena nuestro ordenamiento procesal, en cumplimiento con la exigencia constitucional del debido proceso de ley.

### IV

En el presente caso, se desprende del expediente que la finalidad principal de la demanda es la concesión de un *injunction* permanente contra la obra de construcción de la AFE para hacer valer una servidumbre en equidad. En todo momento se formuló la solicitud de *injunction* preliminar y permanente al amparo de la Regla 57 de Procedimiento Civil, *supra*, por lo que la Asociación de Vecinos la presentó bajo los parámetros de un recurso extraordinario con el propósito de vindicar las condiciones restrictivas que gravaban los predios de la urbanización.

Asimismo, el tribunal de instancia acogió la solicitud como una bajo la mencionada Regla 57, y fundamentó su resolución ordenando la paralización de la obra al amparo de la naturaleza extraordinaria de la figura del *injunction*, incluso ponderando los requisitos estrictos de daño irreparable y falta de remedio adecuado en ley, así como la probabilidad de prevalecer en el pleito y la probabilidad de que la causa de acción se tornara académica, la naturaleza de los daños, y el posible impacto que el remedio tendría en el interés público. Claramente, el tribunal de instancia resolvió al amparo de la Regla 57 al expedir el *injunction* preliminar. Independientemente de la procedencia del remedio dictado, dicho foro se equivocó al acudir a la Regla 56.3 únicamente con el propósito de eximir a la Asociación de

Vecinos del requisito de fianza previa, en claro menosprecio del desarrollo histórico y jurisprudencial de nuestro ordenamiento procesal.

No obstante, consciente del error cometido por el foro de instancia, una mayoría de este Tribunal permite el abuso de discreción en que incurrió el juez de instancia de no requerir la prestación de fianza previa e invoca una nueva norma de derecho procesal. Al así hacerlo, emite un nuevo tipo de *injunction* para vindicar una servidumbre en equidad al palio exclusivo de la Regla 56 de Procedimiento Civil, *supra*. Ello, a pesar de que claramente estamos ante la etapa preliminar de un *injunction* permanente y extraordinario para vindicar una servidumbre que irremediablemente se tiene que regir por los criterios extraordinarios de la referida Regla 57 y la Ley de Injunction de 1906. Veamos.

**A**

Las condiciones restrictivas en urbanizaciones –o las servidumbres en equidad, figura objeto de la controversia medular en el caso de autos– fueron reconocidas por este Tribunal al ejercer la función en equidad que provee la mencionada Ley de Injunction de 1906, y no al amparo del remedio provisional de "no hacer" que instituía la Ley para la Efectividad de Sentencias de 1902. Glinés v. Matta, 19 D.P.R. 409 (1913). Posteriormente, al discutir el desarrollo histórico de la mencionada figura en nuestro sistema de derecho, expresamos que

> aunque el *injunction* es en principio un medio procesal para hacer valer las determinaciones judiciales, en lo referente a las cargas reales de

urbanización sirve de base a las reglas de carácter sustantivo vigentes en nuestro derecho. Así se comprueba que todavía hoy día el derecho sustantivo brota y se desarrolla por los intersticios del procedimiento. De aquí que en Puerto Rico las restricciones al derecho de propiedad impuestas sobre terrenos que van a ser urbanizados no se consideran servidumbres prediales sujetas a lo dispuesto en el Código Civil en relación con éstas. **Son servidumbres que se regulan por los principios de equidad del derecho angloamericano siempre que éstos no estén en conflicto con las leyes vigentes en nuestro país.** Colón v. San Patricio Corporation, 81 D.P.R. 242, 253-254 (1959).

La primacía del carácter extraordinario que rige el *injunction* para hacer valer una servidumbre en equidad ha sido evidente desde que se incorporó dicha figura a nuestro ordenamiento. No obstante, hemos expresado que para hacer valer una condición restrictiva de esta índole no es necesario probar daños reales o perjuicios sustanciales, pues sólo se precisa demostrar una violación a la restricción. Asimismo, cabe señalar que todos esos casos se dieron en el contexto de un *injunction* permanente o un *injunction* preliminar consolidado con un injunction permanente. Véase Asoc. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346 (1986); Colón v. San Patricio Corporation; *supra*; Santaella v. Purón, 60 D.P.R. 552 (1956); Glines v. Matta, *supra*.

Como es sabido, el *injunction* permanente no requiere fianza. A su vez, en aquellas ocasiones nunca discutimos la aplicación de la Reglas 56 o 57 (o su equivalente estatutario al momento de los hechos, a saber la Ley para Asegurar la Efectividad de las Sentencias de 1902 o la Ley de Injunction de 1906)), pues al concederse un *injunction*

permanente, tal diferenciación procesal era inconsecuente. Esta norma especial creada por nuestra jurisprudencia tuvo el efecto de flexibilizar los criterios para conceder un *injunction* permanente en los casos de servidumbre en equidad, mas no de sustituir la aplicación de la Regla 57 por la Regla 56, y mucho menos en casos de *injunction* preliminar que se tutelan expresamente por las Reglas 57.1 y 57.3 de Procedimiento Civil, *supra*.

A la luz de tales pronunciamientos sobre la vindicación de una servidumbre en equidad mediante un *injunction* permanente, la mayoría de este Tribunal pretende eliminar –para casos de esta naturaleza– el requisito de establecer la existencia de daño irreparable o la ausencia de un remedio adecuado en ley, el cual hemos reconocido para los *injunctions* preliminares en general. Véase Puerto Rico Telephone Co. v. Tribunal Superior, *supra*. En vista de lo anterior, la Opinión mayoritaria concluye que en esos casos "el *injunction* se convierte en un remedio ordinario que se divorcia de los requisitos tradicionalmente asociados a la dicotomía entre ley y equidad y adquiere una flexibilidad que lo desvincula de dicho pasado". Además, resuelve que dado que el *injunction* permanente está disponible como un remedio ordinario, la solicitud presentada por la Asociación de Vecinos se debe tramitar exclusivamente al amparo de la Regla 56. Véase Opinión mayoritaria, págs. 18-19.

Disentimos con firmeza de dicha interpretación, pues la mera existencia de la figura de la servidumbre en equidad se debe, precisamente, a la falta de un remedio adecuado en ley

para hacer valer la condición restrictiva. Es por ello que en Glinés v. Matta, *supra*, pág. 4 –el caso en donde este Tribunal reconoció por primera vez las servidumbres en equidad– concedimos el remedio al amparo de la Ley de Injunction de 1906 y los criterios extraordinarios derivados de la equidad por virtud de la propia ley, que es el precedente de la actual Regla 57 de Procedimiento Civil, *supra*. Nunca discutimos en ese caso –ni en ningún otro caso posterior sobre condiciones restrictivas– la posible aplicación de la Ley Para Asegurar la Efectividad de las Sentencias de 1902, la cual al igual que la Regla 56, proveía un remedio provisional de hacer y no hacer, así como varias excepciones al requisito de fianza previa.

A diferencia de lo que concluye la mayoría de este Tribunal, el remedio principal del *injunction* en un caso para hacer valer una servidumbre en equidad **no es de naturaleza ordinaria**, pues esa figura del derecho de la propiedad tiene su origen sustantivo en el derecho angloamericano y surge en nuestro ordenamiento de los criterios extraordinarios de la equidad que se derivan y regulan por mandato expreso de la Ley de Injunction de 1906, y hoy día también por la Regla 57 de Procedimiento Civil, *supra*. Véase Glinés v. Matta, *supra.* La acción para vindicar las servidumbres en equidad o condiciones restrictivas sobre la propiedad no emana del Código Civil de Puerto Rico, sino de nuestra jurisprudencia y del recurso extraordinario del *injunction* ante la ausencia de un remedio adecuado en el derecho civil para tales efectos. Véase M. Godreau y A.

García Saúl, Servidumbres y Conservación, 67 Rev. Jur. U.P.R. 249, 301-302 (1998).[24] Asimismo, el profesor Michel Godreau señala que este Tribunal ha adoptado y reconocido todas las defensas que le otorgan los principios en equidad a un demandado para oponerse al recurso de *injunction* en casos como el que nos ocupa. *Id.*, págs. 303-304.[25] Por tanto, resulta sorprendente que consciente de la dicotomía histórica antes mencionada, hoy el Tribunal de un plumazo haga una fusión de dos remedios provisionales disímiles e incompatibles en el ordenamiento procesal vigente de la actualidad.

**B**

Por otro lado, **la flexibilización jurisprudencial que exime al demandante de probar daños concretos o perjuicios sustanciales para que proceda el** *injunction* **permanente ante una servidumbre en equidad no releva a la parte demandante de probar un daño irreparable, pues la violación misma a la condición restrictiva satisface a plenitud el mencionado**

---

[24] De hecho, este Tribunal ha expresado que las servidumbres en equidad han ido evolucionando "hasta encontrarla hoy con sustantividad propia, **pero siempre conservando la independencia que le presta su origen y procedencia de un ordenamiento foráneo**". Asociación de Vecinos de Villa Caparra v. Iglesia Católica, *supra*, pág. 352, citando a J. Vélez Torres, Lecciones de derecho de cosas, 1976, pág. 416. A tales efectos, José Vélez Torres también ha comentado que esta figura de los derechos reales existe en nuestro ordenamiento "por vía de adopción, con vida y sustantividad propias que **le permiten desenvolverse al margen de la existencia de nuestro Código Civil**". *Id.*, pág. 444.

[25] Entre tales defensas derivadas del derecho común y de la equidad anglosajona encontramos: (1) el consentimiento (acquiescence); (2) la consciencia impura (unclean hands); (3) la incuria (laches) y; (4) el impedimento (estoppel). Colón v. San Patricio Corporation, *supra*; M. Godreau, *supra*, págs. 303-304 (citas omitidas).

**criterio**. La propia Opinión mayoritaria reconoce que el requisito de daño irreparable no es un elemento independiente de una acción de *injunction* permanente, sino que sirve de medio para establecer la ausencia de un remedio adecuado en ley. Opinión mayoritaria, pág. 17, citando a A. Miller & M. Kane, <u>Federal Practice and Procedure</u>, Minnesota, West Publishing Co., Vol. 11A, 1995, págs. 93-94.

Claramente, el criterio de daño irreparable no tiene que ser de carácter especial o económico para que se justifique el remedio extraordinario que contempla el *injunction* bajo la Regla 57 de Procedimiento Civil, *supra*. Todo lo contrario, al discutir la figura del *injunction* como un remedio extraordinario aún "atado a su abolengo de equidad", hemos expresado que "[c]uando existe un remedio de resarcimiento de daños [es decir, daños concretos y cuantificables], y los hechos alegados en la demanda no excluyen de un todo la adecuacidad de ese recurso de vía ordinaria, no debe acudirse a este remedio interlocutorio." <u>A.P.P.R. v. Tribunal Superior</u>, *supra*, pág. 908. Asimismo, desde la vigencia de la Ley de Injunction de 1906 hemos esbozado que **un daño irreparable es un daño que "no puede ser ampliamente compensado en una acción por daños y perjuicios"** <u>González v. Collazo</u>, 14 D.P.R. 855, 859 (1908). Véase además, R. Hernández Colón, *supra*, pág. 466.

**Un *injunction* para hacer valer una servidumbre en equidad, sea preliminar o permanente, trata precisamente de un recurso extraordinario al que se acude necesariamente por no existir un remedio adecuado en daños ni bajo ninguna**

**disposición del Código Civil**. A tenor con ello, en ocasiones anteriores hemos considerado el criterio de daño irreparable al examinar la concesión de un *injunction* para vindicar una servidumbre en equidad. Véase Rodríguez v. Gómez, 156 D.P.R. 307 (2002). Además, tanto nuestros pronunciamientos en Puerto Rico Telephone, *supra*, como los comentaristas del desarrollo histórico del *injunction* discuten el requisito de probar un daño irreparable como equivalente o en la alternativa al requisito de probar la ausencia de un remedio adecuado en ley.[26] Véase D. Rivé Rivera, *supra*, págs. 21-35; O. Fiss, The Civil Rights Injunction, Indiana University Press, 1978. En efecto, constituyen dos formulaciones del mismo criterio a la hora de conceder un *injunction* preliminar. Del mismo modo, este Tribunal ha aclarado que el concepto de evitación de daños irreparables tan sólo

---

[26] En un artículo influyente sobre este tema, el profesor Douglas Laylock aclara lo siguiente sobre la confusión histórica entre el requisito de daño irreparable y de falta de un remedio adecuado en ley, que en efecto constituyen dos formulaciones del mismo criterio:

"[…]the verbal formulation of the irreparable injury rule has tended to exaggerate the true extent of the preference for legal remedies.

In the first place, the rule has two formulations, and this occasionally causes a judge to think there are two requirements: that there be no adequate remedy at law and that the injury be irreparable. This misunderstanding in turn leads to the suggestion that the injury itself must have some special quality —perhaps that it be especially egregious– when **'irreparable injury´ should mean simply injury that cannot be repaired (remedied) at law. Thus, even a relatively insignificant injury is irreparable if it cannot be measured in money**[…]". D. Laylock, *Injunctions and the Irreparable Injury Rule*, 57 Texas Law Rev. 1065 (1979).

constituye un aspecto de la regla básica de que procede el *injunction* siempre que el remedio existente en el curso ordinario de la ley sea inadecuado. <u>Cruz v. Ortiz</u>, 74 D.P.R. 321, 328 (1953).

En pleitos incoados para hacer valer una servidumbre en equidad no existe otro curso adecuado en la ley ni remedio ordinario que no sea un *injunction* bajo la Regla 57 de Procedimiento Civil, *supra*, pues la existencia de este derecho real se desprende, directa y precisamente, de los criterios extraordinarios del *injunction*. La posibilidad de obtener un *injunction* permanente no constituye un remedio ordinario que tenga el efecto de excluir la aplicación de la Regla 57 para el injunction *preliminar* en este caso, pues de lo contrario se estaría llegando a la conclusión contraintuitiva de que nunca puede haber un *injunction* preliminar bajo la Regla 57 si existe una posibilidad de eventualmente obtener el remedio del *injunction* permanente para los mismos propósitos de vindicar las condiciones restrictivas.

A la luz de lo anterior, entendemos que tampoco existe justificación alguna para que el criterio de "daño irreparable" se interprete y aplique con una rigidez que tenga el efecto de privar al demandado de las garantías procesales que provee la Regla 57. Los criterios antes mencionados, incluyendo el de daño irreparable, son directrices para guiar al tribunal al momento de evaluar si la prueba presentada al solicitar el *injunction* preliminar

lo justifica. D. Rivé Rivera, *supra*, pág. 23.[27] Tales requisitos extraordinarios se deben evaluar a la luz de la totalidad de las circunstancias particulares del caso, y ningún factor debe tener el efecto de reprimir la aplicación de la Regla 57 y la Ley de Injunction en beneficio de las partes, mucho menos cuando el *injunction* es el remedio principal y extraordinario solicitado por la parte demandante.

Por tanto, discrepamos de la determinación de la mayoría de que el *injunction* permanente está disponible en este caso como un remedio ordinario. Dicha conclusión parece ser un subterfugio para forzar la aplicación de la Regla 56 en el caso de epígrafe y así eximir a la Asociación de Vecinos de prestar la fianza previa correspondiente. A su vez, tal interpretación es claramente incompatible con nuestro ordenamiento procesal, pues el *injunction* para vindicar la servidumbre en equidad siempre se ha considerado como un recurso extraordinario desde que se adoptó en nuestro ordenamiento en 1913 y desde su génesis en las Cortes de Equidad de Inglaterra del siglo diecinueve. Véase M. Godreau, *supra*, pág. 290.

Más aún, el requisito de fianza previa que establece la Regla 57 de Procedimiento Civil, *supra*, no es una exigencia trivial del sistema procesal puertorriqueño. Éste es el

---

[27] Para una discusión más extensa sobre la amplitud y flexibilidad del criterio de daño irreparable, véase W. Williamson Kerr, A treatise on the Law and Practice of Injunctions in Equity, London, William Maxwell and Son, 1867, págs. 199-200; J. Leubsdorf, The Standard for Preliminary Injunctions, Harv. Law Rev. 525, 551-552 (1978).

único garante de que la Asociación de Vecinos responderá por los daños ocasionados por el remedio extraordinario en caso de que no prevalezca al finalizar el caso, en cumplimiento con la exigencia constitucional del debido proceso de ley que se activa por el interés propietario de la AFE sobre su solar. Al reinstalar el mencionado *injunction*, la mayoría de esta Curia convalida una actuación judicial que rebasa la clara intención de la Asamblea Legislativa y del Tribunal manifestada en las Reglas de Procedimiento Civil y en la delimitación de los mencionados remedios provisionales. Además, dicha acción deja desprotegida a la AFE ante los posibles daños ocasionados por la paralización de la obra, lo que se agrava ante la realidad de que la parte demandante es una Asociación de Vecinos incorporada *ad hoc* para presentar la demanda en este caso, la cual carece de bienes para resarcir a la AFE en caso de no prevalecer en el *injunction* permanente. En vista de ello, entendemos que el foro de instancia abusó de su discreción en clara violación al debido proceso de ley de la AFE, por lo cual no debe sostenerse la orden de *injunction* preliminar.

**C**

Por último, entendemos que aun si aplicara –según el criterio de la mayoría– la Regla 56 de Procedimiento Civil, *supra*, al caso de autos, la situación de hechos ante nuestra consideración no cumple con ninguna de las excepciones establecidas en la Regla 56.3, pues no se desprende de la servidumbre en equidad que estas condiciones sean exigibles contra la construcción de la AFE. También consideramos que

-aun si procediera eximir la prestación de fianza previa bajo una de las excepciones enumeradas en la Regla 56.3- el foro de instancia abusó de su discreción al conceder un remedio provisional que afectaría el derecho propietario de los demandados sin celebrar una vista plenamente evidenciaria conforme al debido proceso de ley de la parte demandada. Véase nuestra opinión de conformidad en Asociación de Vecinos v. AFE, *supra.*

A tenor con nuestros pronunciamientos en Rivera Rodríguez & Co. v. Lee Stowell, *supra*, una medida provisional para asegurar la efectividad de una sentencia en un procedimiento bajo la Regla 56 exige la celebración de una vista para salvaguardar el derecho constitucional al debido proceso de ley, la que no se celebró en el presente caso conforme a las exigencias de la referida cláusula constitucional. ¿Puede la mayoría avalar, en este caso, la aplicación de la Regla 56 de una forma y manera que este Tribunal expresó en Lee Stowell que era inconstitucional? Contestamos en la negativa.

El interés propietario que tutela la Constitución y que cualificamos en Lee Stowell a la luz de la Regla 56 **requiere que se le otorgue a un individuo con un interés protegido el derecho a** (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado, y a (6) que la decisión se base en el récord. *Id.* Por tanto, cualquier medida en aseguramiento

de sentencia que atente contra este derecho debe cumplir cabalmente con dichas exigencias del debido proceso de ley.

En el caso de autos, se desprende del expediente que la AFE -el titular de la propiedad en controversia- obtuvo todos los permisos correspondientes antes de iniciar la obra de construcción. Por tanto, es menester concluir que la AFE goza de un interés propietario que sólo podría ser restringido conforme a los criterios constitucionales que exige el debido proceso de ley, en cumplimiento con su aplicación particular a la Regla 56 de Procedimiento Civil, *supra*, según establecimos en Rodríguez & Co. v. Lee Stowell, *supra*.

Claramente, el tribunal de instancia abusó de su discreción al limitar el carácter de la prueba presentada en la vista y al no permitir la presentación de prueba testifical. El foro de instancia basó su determinación de conceder el *injunction* en el carácter atípico de la estructura, lo cual hubiera precisado prueba sobre al menos una muestra de las demás residencias y sobre la defensa de extinción levantada por la AFE. Debemos tener en cuenta que la AFE presentó como defensa la incuria de la Asociación de Vecinos, alegando hechos constitutivos de ese tipo de defensa. No obstante, dada la ausencia de una vista plenamente evidenciaria que cumpliera con las exigencias constitucionales esbozadas en Lee Stowell, la AFE no pudo presentar prueba a tales efectos. Es menester concluir, por tanto, que la concesión del *injunction* preliminar -que la mayoría de este Tribunal reinstala como un remedio

provisional de sentencia al amparo de la Regla 56- incidió en el derecho propietario de los demandados, privándolos del disfrute de su propiedad sin una determinación en los méritos y por un tiempo indeterminado en patente violación al debido proceso de ley.

**V**

Por los fundamentos que anteceden, confirmaríamos el dictamen del foro apelativo y no reinstalaríamos la orden de *injunction* preliminar emitida por el tribunal de instancia. Enterados de que no se celebró una vista conforme al debido proceso de ley, y a la luz de que la Regla 57 de Procedimiento Civil, *supra*, claramente no permite que se emita un *injunction* sin fianza previa, lo que procedía era dejar sin efecto su dictamen. Sin embargo, la decisión tomada hoy por este Tribunal de reinstalar el *injunction* sin una fianza correspondiente y sin celebrar una vista plenamente evidenciaria cambia el estado de derecho en cuanto al *injunction* y los remedios provisionales, con el único propósito de ratificar una actuación del foro de instancia contraria a nuestro ordenamiento procesal y en clara violación a los principios más elementales del debido proceso de ley.

Por ende, disentimos respetuosamente del curso de acción seguido por la mayoría.

Federico Hernández Denton
Juez Presidente